COMMONWEALTH of Pennsylvania in the Superior Court of Pennsylvania, Appellant

v.

Nafeast FLAMER, Appellee.

Commonwealth of Pennsylvanaia, Appellant

v.

Nafeast Flamer.

Commonwealth of Pennsylvania, Appellant

v.

Marvin L. Flamer.

Commonwealth of Pennsylvnaia, Appellant

v.

Marvin L. Flamer.

Superior Court of Pennsylvania.

Argued June 27, 2012.
Filed Sept. 6, 2012.

Mary L. Huber, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

David M. Walker, Philadelphia, for Marvin Flamer, appellee.

BEFORE: STEVENS, P.J., GANTMAN, J., and PANELLA, J.

OPINION BY PANELLA, J.

Currently before us are two appeals by the Commonwealth from separate cases[1] where the trial court denied part of the Commonwealth's motion *in limine*. Before the trial of Appellees, Marvin Flamer and Nafeast Flamer, for the murder of Allen Moment, Jr., the Commonwealth filed a motion *in limine* to introduce evidence of the Appellees' conspiracy to kill a Commonwealth witness, Abdul Taylor. After the trial court denied part of the Commonwealth's motion in both cases, the Commonwealth appealed. The central issue presented in these appeals is whether the trial court abused its discretion by excluding certain evidence that is capable of establishing the existence of a conspiracy between the Appellees to murder Abdul Taylor. After careful review, we reverse in part and affirm in part.

On January 20, 2006, Allen Moment, Jr. was shot multiple times in Philadelphia. Trial Court Opinion, at 1. Moment survived from this shooting for over two years, until August 6, 2008, when he eventually died from the injuries he suffered in the shooting. *See id.* Marvin, Nafeast, and Hakim Bond were arrested and charged with first-degree murder for killing Moment. *See id.*, at 2.

At the Appellees' trial for the murder of Moment, the Commonwealth planned to call Abdul Taylor, who, according to the Commonwealth, had knowledge of the plot by Marvin and Nafeast to kill Moment. *See* Appellant's Brief, at 5. On May 6, 2010, three months before the case was scheduled for trial, Abdul Taylor was killed after being shot in the head at close range. *See N.T.*, Motion *in Limine* Hearing, 4/4/11, at 27. Derrick "Heavy" White was arrested, charged, and ultimately convicted of first-degree murder for killing Taylor. *See* Court Summary, *Common-*

---

1. Because the Commonwealth raises the same issue from the same factual and procedural history in two separate appeals against Appellees, Marvin Flamer and Nafeast Flamer, we consolidate the two appeals into this single Opinion.

*wealth v. White,* CP–51–CR–0012991–2010, 11/29/11.

The Commonwealth had evidence that showed that both Marvin and Nafeast conspired with White to kill Taylor to prevent Taylor from testifying against them at the Moment murder trial. *See* Appellant's Brief, at 6. Before the Moment murder trial, the Commonwealth filed a motion *in limine,* where it sought to introduce fifteen pieces of evidence to establish that Nafeast and Marvin conspired with White to kill Taylor. *See* Commonwealth Motion to Admit Evidence, 3/24/11, at 4–6.

After considering the Commonwealth's motion, the trial court denied admission of most of the evidence referenced in the motion, granted admission of a very limited number of items, and held the remainder of the motion under advisement. *See* Order Granting in Part Denying in Part Motion *in Limine,* 4/4/11, at 2. The trial court permitted admission of (1) a photograph of Marvin and Nafeast with White, and (2) testimony of the medical examiner as to the cause and manner of Taylor's death. *See id.,* at 1–2. The trial court stated that it admitted evidence of this conspiracy, over the Flamers' objections, to show the consciousness of guilt of Nafeast and Marvin. *See* Trial Court Opinion, at 6. The trial court made no judgment with regard to the admissibility of various telephone conversations made by Marvin and Nafeast, and took the admissibility of that evidence under advisement. *See* Order Granting in Part Denying in Part Mo-

tion *in Limine,* 4/4/11, at 2–3. The trial court found the remainder of the evidence connecting Marvin and Nafeast to the murder of Taylor inadmissible because it held that evidence was irrelevant, cumulative, confusing, and on balance prejudicial. *See* Trial Court Opinion, at 10.

■ On the same day the trial court entered its order, the Commonwealth filed an interlocutory appeal.[2] *See* Notice of Appeal, 4/4/11. Before filing its concise statement of matters complained of on appeal, the Commonwealth filed and was granted an application for remand, so the trial court could enter a ruling on the admissibility of the phone conversations it had held under advisement. *See* Order Granting Remand, 5/23/11. On July 25, 2011, the trial court heard argument on the admissibility of the recorded phone conversations and on August 11, 2011, the trial court entered its order with regard to the admissibility of that evidence. *See* N.T., Motion Hearing, 8/11/11, at 4. The trial court ruled that the Commonwealth could present evidence of the contents of two phone conversations between Marvin and Geneva Flamer, where Taylor was discussed, which took place on September 18, 2008, and May 7, 2010. *See id.,* at 7, 11. The trial court also allowed the Commonwealth to present evidence that Nafeast made phone calls to Geneva and talked to White on those calls on January 16, 2010, January 25, 2010, February 14, 2010, and February 17, 2010. *See id.,* at 8–10. However, the trial court ruled that

2. Under Pa.R.A.P. 311(d), in criminal cases the Commonwealth has a right to appeal an interlocutory order if the Commonwealth certifies in a notice of appeal that that order "will terminate or substantially handicap the prosecution." The Supreme Court of Pennsylvania has held that we have jurisdiction to hear an appeal from an interlocutory order denying a motion *in limine* that has the effect of terminating or substantially handicapping

the prosecution. *See Commonwealth v. Matis,* 551 Pa. 220, 231, 710 A.2d 12, 17 (1998). Here, the Commonwealth, in both cases, has certified that the trial court's order denying part of their motion *in limine* will terminate or substantially handicap their case. *See* Notices of Appeal, 9/22/11. Therefore, under Pa.R.A.P. 311(d), we have jurisdiction to hear this appeal from the trial court's interlocutory order.

the Commonwealth could only present evidence showing that the calls were made; the contents of those conversations were held inadmissible. *See id.*, at 8.

From this order, the Commonwealth then filed another interlocutory appeal.[3] *See* Notice of Appeal, 9/2/11. On appeal, the Commonwealth raises one issue: whether the trial court abused its discretion in denying part of the Commonwealth's motion *in limine* to admit evidence that connected Marvin and Nafeast to the murder of Commonwealth witness Taylor? *See* Appellant's Brief, at 3.

We note that the Commonwealth is challenging the trial court's ruling on the admissibility of evidence in a motion *in limine*. We review a trial court's decision to grant or deny a motion *in limine* with the same standard of review as admission of evidence at trial. *See Commonwealth v. Reese*, 31 A.3d 708, 715 (Pa.Super.2011) (*en banc*). With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. *See id.*, at 716. An abuse of discretion is not merely an error in judgment, but an "overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record." *Commonwealth v. Cascardo*, 981 A.2d 245, 249 (Pa.Super.2009), *appeal denied*, 608 Pa. 652, 12 A.3d 750 (2010).

With the above principles in mind, we turn to the issue raised by the Commonwealth. On appeal, the Commonwealth claims that the trial court abused its discretion in finding the following evidence that connects Marvin and Nafeast to the murder of Taylor inadmissible at the Moment murder trial:

(1) testimony of police officers who responded to the scene of Taylor's shooting;

(2) testimony of the crime scene officers who examined the scene where Taylor was shot;

(3) expert DNA testimony to identify White's DNA on evidence recovered from where Taylor was shot;

(4) White's confession to the murder of Taylor;

(5) testimony of Malik Sutton concerning a plot to kill Taylor;

(6) testimony from Taylor's mother and girlfriend regarding Taylor's fear about being killed because he came forward to police;

(7) recordings of telephone conversations made by both Marvin and Nafeast; and

(8) Nafeast's personal raps and writings recovered in his prison cell.[4]

*See* Appellant's Brief, at 6–8.

■ As stated above, the trial court found sufficient grounds to permit the Commonwealth to present evidence of a conspiracy by Marvin and Nafeast with White to kill Taylor to prevent him from testifying at the Moment murder trial.

---

3. We granted the Commonwealth's petition to consolidate the two appeals for both cases into one appeal for each case. *See* Order Granting Application For Consolidation, 10/26/11.

4. In its motion *in limine*, the Commonwealth also asked the trial court to admit evidence that Nafeast and White conspired together in 2007 to kill Richard Smith. *See* Appellant's Brief, at 8. The trial court found this evidence to be inadmissible. *See* Order Granting in Part Denying in Part Motion *in Limine*, at 2, 4/4/11. On Appeal, the Commonwealth does not challenge the trial court's decision to exclude this evidence. *See* Appellant's Brief, at 22 n. 9.

*See* Trial Court Opinion, at 6. While this is evidence of a bad act or crime, the trial court was correct in admitting this evidence to show the history of the case and the guilty conscience of the defendants. Under the Pennsylvania Rules of Evidence, evidence of other bad acts or crimes that are not currently being prosecuted against the defendant are not admissible against the defendant to show his bad character or propensity to commit criminal acts. *See* Pa.R.E. 404(b). However, evidence of other crimes may be admissible where that evidence is used for some other purpose. *See Commonwealth v. Lark,* 518 Pa. 290, 302, 543 A.2d 491, 497 (1988). Two such purposes are applicable here. First, the evidence showing that Marvin and Nafeast conspired with White to kill Taylor is admissible to prove the history of the case, also known as the *res gestae* exception. *See Commonwealth v. Murphy,* 540 Pa. 318, 328, 657 A.2d 927, 932 (1995) (holding that evidence that the defendant killed a witness who saw the defendant commit the murder he was on trial for was so interwoven with the facts of the case to be admissible under the *res gestae* exception). Second, this evidence was also admissible to show the consciousness of guilt of Marvin and Nafeast for the murder of Moment. *See Commonwealth v. Goldblum,* 498 Pa. 455, 473, 447 A.2d 234, 243 (1982) (holding that evidence that the defendant paid a police officer to kill a witness was admissible to prove consciousness of guilt).

Despite allowing the Commonwealth to present evidence showing that there was a conspiracy by Marvin and Nafeast to kill Taylor, the trial court did not allow the Commonwealth to present most of the evidence that established this conspiracy. The trial court prevented the Commonwealth from presenting certain evidence of a conspiracy for two reasons. First, the trial court excluded certain evidence of the conspiracy between Marvin and Nafeast to kill Taylor because it believed that the admission of additional evidence of the conspiracy "would result in the trial of Taylor's murder, for which these Appellees are not on trial." Trial Court Opinion, at 9. Second, the trial court found certain evidence of the conspiracy inadmissible as irrelevant, cumulative, confusing, or on balance prejudicial. *See id.,* at 10. Because we find that the trial court abused its discretion in excluding this evidence, we must reverse.

With regard to the first reason offered for excluding evidence of the conspiracy, decisions of our Supreme Court run contrary to the trial court's analysis as to the extent to which evidence is admissible to prove prior bad acts. *See Commonwealth v. Paddy,* 569 Pa. 47, 69, 800 A.2d 294, 307–08 (2002). In *Paddy,* the defendant was on trial for murdering a witness to a prior murder the defendant had committed. *See id.,* at 60, 69 A.2d at 301. At trial, the Commonwealth was allowed to present extensive evidence of the defendant's earlier murder to establish the defendant's motive in murdering the witness. *See id.,* at 69, 69 A.2d at 307. On appeal, the defendant argued that the "sheer extent and prominence" of evidence of his previous murder denied him a fair trial. *Id.,* at 69, 69 A.2d at 307–08. The Supreme Court rejected the defendant's argument and held that the Commonwealth must be given the opportunity to demonstrate the strength of the motive for the murder. *See id.*

Although the facts of our current case differ from the facts of *Paddy,* the Supreme Court's analysis is applicable here. In *Paddy,* evidence of prior bad acts was admissible to prove motive, while here evidence of prior bad acts is admissible to prove the history of the case and the consciousness of guilt of Marvin and Nafeast.

However, we find the Supreme Court's reasoning in *Paddy* applicable to the facts here because the defendant's consciousness of guilt, like motive, is highly relevant in the determination of guilt. *See Commonwealth v. Pestinikas*, 421 Pa.Super. 371, 617 A.2d 1339, 1347–48 (1992) (holding that evidence of consciousness of guilt is relevant to form a basis from which guilt can be inferred). Therefore, as with motive, the Commonwealth must be given the opportunity to show the strength of the defendant's consciousness of guilt through all admissible evidence. The highly probative nature of this evidence clearly outweighs any undue prejudice arising from its admission. We therefore conclude that the trial court erred in excluding this evidence.

 The trial court also excluded certain evidence that establishes a conspiracy between Marvin and Nafeast with White to kill Taylor because it believed that this evidence was inadmissible as irrelevant,[5] cumulative,[6] confusing, and on balance prejudicial.[7] *See* Trial Court Opinion, at 10. With regard to several pieces of evidence, the trial court is incorrect in its determination.[8]

 First, the trial court abused its discretion in not admitting evidence which established that White actually killed Taylor. The Commonwealth asked the trial court to admit several pieces of evidence which showed that White killed Taylor, including: (1) testimony of police officers who responded to the scene of Taylor's shooting; (2) testimony of the crime scene officers who examined the scene where Taylor was shot; (3) expert DNA testimony to identify White's DNA on evidence recovered from where Taylor was shot; and (4) White's confession to the murder of

---

5. The threshold inquiry with the admission of evidence is whether the evidence is relevant. *See Commonwealth v. Cook*, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008). Unless otherwise prohibited by law, all relevant evidence is admissible; all irrelevant evidence is inadmissible. Pa.R.E. 402. The Pennsylvania Rules of Evidence defines relevant evidence as "evidence having *any tendency* to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401 (emphasis added).

6. Evidence may be excluded if its probative value is outweighed by the "needless presentation of cumulative evidence." Pa.R.E. 403. We define cumulative evidence as "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 989 (Pa.Super.2007) (quoting Black's Law Dictionary, Seventh Edition, at 577), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008). Evidence that strengthens or bolsters existing evidence is corroborative evidence; we have previously explained that corroborative evidence is not cumulative evidence. *See id.*

7. Evidence may also be excluded if the probative value is outweighed by the danger of unfair prejudice. Pa.R.E. 403. "Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case." *Commonwealth v. Page*, 965 A.2d 1212, 1220 (Pa.Super.2009) (quoting *Commonwealth v. Dillon*, 592 Pa. 351, 367, 925 A.2d 131, 141 (2007)). The trial court is not required to "sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand." *Id.* Exclusion of evidence on the grounds that it is prejudicial is "limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Foley*, 38 A.3d 882, 891 (Pa.Super.2012).

8. We find the trial court abused its discretion in excluding this evidence as irrelevant, cumulative, confusing, and prejudicial. *See* Trial Court Opinion, at 10. We make no determination as to the admissibility of this evidence under the other rules of the Pennsylvania Rules of Evidence or the Confrontation Clause of the United States or Pennsylvania Constitutions.

Taylor. *See* Commonwealth Motion To Admit Evidence, 3/24/11, at 1. The trial court found all four pieces of evidence inadmissible. Therefore, the trial court barred the admission of evidence which showed that White killed Taylor. The relevancy of this evidence in establishing that White killed Taylor far outweighs any prejudicial effect. We conclude, then, the trial court committed an abuse of discretion by excluding this evidence.

■ Second, the trial court abused its discretion in finding the testimony of Malik Sutton irrelevant, cumulative, and on balance prejudicial. According to the Commonwealth, Malik Sutton would testify about conversations he had with White, where White talked about a plot to kill Taylor because he "ratted out Nafeast." Appellant's Brief, at 19. This evidence is highly relevant in establishing that Taylor was killed to prevent him from testifying. Moreover, Sutton's testimony would not be cumulative because his testimony was the only other evidence establishing White's motive to kill Taylor. Again, in light of its high probative value, and when combined with the other evidence, we find that this testimony is not unduly prejudicial. *See Commonwealth v. Foley*, 38 A.3d 882, 891 (Pa.Super.2012) (exclusion of evidence on grounds that is prejudicial "is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case"). Therefore, the trial court committed an abuse of discretion in excluding Sutton's testimony on those grounds.

■ Third, the trial court abused its discretion in finding the testimony of Taylor's girlfriend and mother inadmissible as irrelevant, cumulative, and prejudicial. According to the Commonwealth, both witnesses would testify about Taylor's apprehension that there would be retaliation if

he testified. *See* Commonwealth Motion to Admit Evidence, 3/24/11, at 5. It is well settled in Pennsylvania that evidence about the victim is prejudicial, and inadmissible, if it is introduced only to create sympathy. *See Commonwealth v. Story*, 476 Pa. 391, 398–99, 383 A.2d 155, 159 (1978). However, our Supreme Court has found that evidence is admissible if it connects the victim with circumstances of the crime. *See Commonwealth v. Yarris*, 519 Pa. 571, 595–96, 549 A.2d 513, 525 (1988) (holding that evidence about the victim was admissible to establish motive). While hearing testimony from Taylor's mother and girlfriend on the circumstances of his death will prejudice the Appellees, this testimony is relevant to establish that there was conspiracy to kill Taylor. The probative value of this testimony, when combined with the other testimony, clearly outweighs any prejudicial effect because it establishes White's motive to kill Taylor to prevent him from testifying.

■ Fourth, the trial court abused its discretion in finding the writings and raps of Nafeast to be irrelevant and prejudicial. In these raps, Nafeast talks about people "keeping their mouths shut", sending his friends to kill for him, and "popping shells" in people that "run their mouth." Commonwealth Exhibit 11, 12, 13. These statements in the raps have a tendency to show contemplation for a conspiratorial arrangement; therefore, these statements are relevant. Although these statements are also prejudicial, the fact that these statements are harmful to the defendant's case does not make these statements unduly prejudicial. *See Commonwealth v. Kouma*, 53 A.3d 760, 770, 2012 WL 1918876 (Pa.Super.2012) (holding that evidence is not prejudicial merely because it is harmful to the defendant, but must "rouse the jury to overmastering hostility"). Statements that are on balance prejudicial are state-

ments that inflame the jury to decide the case on that evidence alone and not legal propositions. *See Commonwealth v. Foley*, 38 A.3d 882, 891 (Pa.Super.2012). These statements do not rise to that level of prejudice. Therefore, the trial court abused its discretion in finding the relevant statements in these raps inadmissible.

■ Finally, the trial court committed an abuse of discretion in finding inadmissible part of a phone conversation between Marvin and Geneva that occurred on May 8, 2010. In that conversation, which occurred two days after Taylor was killed, Geneva stated:

> Geneva Flamer: Heavy [White] called George and said, did he stay out of the papers? (laughs) (Indiscernible name) went and got one so that you can read it, too. He came runnin' upstairs to show me this morning. I said put it there fast.
>
> Marvin Flamer: Wow.

Transcript of Recorded Phone Conversation, 5/8/10, at 2. This statement by Geneva to Marvin is relevant[9] because it has a tendency to establish that Marvin was aware of a plot to kill Taylor. This state-ment is also not cumulative because while there is evidence establishing that Marvin was aware of and participating in the conspiracy, this conversation bolsters and strengthens that additional evidence. *See Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 989 (Pa.Super.2007) (holding that detective's testimony that bolstered and strengthened other evidence was not cumulative). Finally, this evidence is not unduly prejudicial because while it is harmful to Marvin, it will not inflame the jury. Therefore, the trial court abused its discretion in excluding this statement.

We find no abuse of discretion by the trial court in finding the remaining evidence inadmissible. The trial court did not abuse its discretion in its rulings with regard to the remaining phone conversations of Marvin and Nafeast. The trial court was correct in limiting the admissibility of four phone calls made by Nafeast to Geneva to just that the calls were made because the contents of those conversations were irrelevant.[10] The trial court was also correct in finding other phone calls made by Marvin and Nafeast inadmissible because they too are irrelevant.[11] Therefore, the trial court was correct in

---

9. The remainder of the phone conversation between Marvin and Geneva that occurred on May 8, 2010, is irrelevant. *See* Transcript of Recorded Phone Conversation, 5/8/10. Therefore, the trial court did not abuse its discretion by finding the remainder of that conversation inadmissible.

10. The Commonwealth argues that the content of the February 17, 2010, phone conversation is relevant because Nafeast tells White to "go in for me bro" and then Nafeast proceeded to rap about the case. Appellant's Brief, at 21. The Commonwealth incorrectly describes the content of the conversation. A close reading of the transcript of the conversation, reveals that White told Nafeast to "go in for me bro." Transcript of Recorded Phone Conversation, 2/17/10, at 2. Moreover, the rap Nafeast then said to White is too vague to be construed as being about the case. *Id.*, at 2–3. We find no abuse of discre-tion by the trial court in finding this conversation irrelevant. The Commonwealth also argues that the contents of the January 16, 2010, conversation between Nafeast and White was relevant because Nafeast calls Taylor "outta pocket" which, according to the Commonwealth, is slang for out of control. Appellant's Brief, at 21. Again, the Commonwealth misconstrues the contents of this conversation. While Nafeast does call someone "outta pocket," it is unclear whom he is describing as out of control. Transcript of Recorded Phone Conversation, 1/16/10, at 2. Therefore, we find no abuse of discretion in the trial court finding this conversation irrelevant.

11. The Commonwealth argues that the April 13, 2010, call between Nafeast and an unidentified male was relevant because Nafeast tells the man that he is "about to give [him] some

finding the content of these calls inadmissible.

Given the foregoing, we conclude that the trial court abused its discretion in excluding: (1) testimony of police officers who responded to the scene of Taylor's shooting; (2) testimony of the crime scene officers who examined the scene where Taylor was shot; (3) expert DNA testimony to identify White's DNA on evidence recovered from where Taylor was shot; (4) White's confession to the murder of Taylor; (5) the testimony of Malik Sutton, (6) testimony from Taylor's mother and girlfriend regarding Taylor's fear about being killed because he came forward to police; (7) the relevant portions of raps written by Nafeast in prison; and (8) the relevant portion of the May 8, 2010, phone conversation between Marvin and Geneva. We find no abuse of discretion in the remainder of the trial courts orders.

The order admitting and excluding evidence entered on April 4, 2011, and was appealed for Nafeast in 930 EDA 2011 and for Marvin in 932 EDA 2011, is reversed. The order admitting and excluding evidence entered on August 11, 2011, and appealed for Nafeast in 2388 EDA 2011 and Marvin in 2389 EDA 2011, is reversed in part, and affirmed in part. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.

GANTMAN, J., concurs in the result.

shit," then Nafeast proceeds to rap about the case. Appellant's Brief, at 21. A close reading of the transcript of the conversation shows that the rap was too vague to be construed as being about the case. *See* Transcript of Recorded Phone Conversation, 4/13/10, at 1–2. Therefore, we find no abuse of discretion by the trial court in finding this conversation irrelevant.