J-A30033-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN L. COOPER, JR., | |
| Appellant | No. 250 EDA 2013 |

Appeal from the Judgment of Sentence December 14, 2012
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0004413-2011

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JOHN L. COOPER, JR., | |
| Appellant | No. 252 EDA 2013 |

Appeal from the Judgment of Sentence December 14, 2012
in the Court of Common Pleas of Delaware County
Criminal Division at No.: CP-23-CR-0004425-2011

BEFORE:  LAZARUS, J., MUNDY, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:**FILED FEBRUARY 18, 2015**

---

[*] Retired Senior Judge assigned to the Superior Court.

In these consolidated cases, Appellant, John L. Cooper, Jr., appeals from the judgment of sentence imposed after his jury conviction of first degree murder, criminal conspiracy to commit murder, carrying a firearm without a license, and related offenses.[1] We affirm.

On June 1, 2010, officers from the City of Chester Police Department were dispatched to the 200 block of Patterson Street for a reported shooting. Officer Michael Dingler was first on the scene and observed the victim, Jabree Hughes, with multiple gunshot wounds to his back. On June 3, 2010, at docket number CP-23-CR-0004425-11, Appellant was arrested for carrying a firearm without a license related to the incident. On April 7, 2011, after further investigation, the Commonwealth filed murder and related charges against Appellant at docket number CP-23-CR-0004413-11. The cases were joined for trial, which commenced on October 22, 2012.

For ease of disposition, we will include only those facts from trial that are pertinent to our review. As the trial court explained in its December 11, 2013 opinion:

> . . . [T]he Commonwealth called Alvin Herring, an eyewitness to the crime, to testify at trial. Herring, who did not come forward and speak to police until nine months after the incident, was asked by the Commonwealth on direct examination why he did not come forward earlier. Herring replied that he did not want to involve himself in the situation because he was very scared. (**See** N.T. Trial, 10/23/12, at 78-79).

---

[1] 18 Pa.C.S.A. §§ 2502(a), 903, and 6106, respectively.

Defense counsel effectively cross[-]examined Herring at trial on his failure to remain on the scene to speak with police, as well as his failure to call the police the next day, the next month, or in the following months. (*See id.* at 94). On re-direct, the Commonwealth asked the following:

[THE COMMONWEALTH]: Sir, [defense counsel] went over quite extensively the fact that you didn't give a statement in this case and come forward and speak to the police until several months after the murder, correct?

[HERRING]: Yes, sir.

[THE COMMONWEALTH]: And you, I think you indicated, on direct examination[,] that was because you were scared, right?

[HERRING]: Yes, sir.

[THE COMMONWEALTH]: Sir, what—what happens to witnesses that come forward in the city of Chester?

(*Id.* at 182-83).

Defense counsel immediately objected to this question, and the court immediately sustained the objection and called a sidebar. (*See id.* at 183). Defense counsel then moved for a mistrial, and after discussion between the court and counsel, the court denied the motion for a mistrial[.] . . .

\* \* \*

. . . [T]he Commonwealth [also] called Deputy District Attorney Daniel McDevitt to testify about a plea agreement that had been made with . . . Herring [in an unrelated case]. The Commonwealth called McDevitt to refute the inference raised by defense counsel that Herring had received special treatment in exchange for his testimony at trial. McDevitt testified that Herring had not been promised anything in exchange for his testimony. He explained that "under the agreement, the Commonwealth . . . agreed with Mr. Herring that when he went to sentencing, the Commonwealth would inform the [j]udge of the nature and extent of his cooperation in this case, but would

- 3 -

make no other recommendation as to the sentence that the [j]udge would impose." (**Id.** at 219).

When asked on re-direct examination why the felony charges that had originally been charged in Herring's underlying case had been *nolle prossed*, McDevitt testified that "[t]here was insufficient evidence to prove that charge in the Court of Common Pleas." (**Id.** at 232). The defense moved for a mistrial, which [the trial] court denied. (**See id.** at 233-35). . . .

\* \* \*

. . . Steven Cooper testified that he had met Appellant in prison, and that Appellant had told him that he had murdered Jabree Hughes in retribution for killing an individual by the name of Cuddy.[2] On cross[-]examination, defense counsel challenged Cooper's trustworthiness by asking him if he was "somewhat of a professional testifier in homicide cases." (**Id.** at 331). [Cooper] answered that he had previously testified in other cases and was scheduled to testify against a former cellmate . . . in an upcoming homicide trial. (**See id.** at 333-34). [Cooper] told defense counsel that he was testifying in four homicide cases based upon information that he received in prison. (**See id.** at 338-39).

On re-direct, and in an effort to counter defense counsel's attempt to paint the witness as "a professional testifier in homicide cases", [(**id.** at 331),] the Commonwealth asked the following:

> [THE COMMONWEALTH]: Sir, [defense counsel] went over the fact that you testified before in a [h]omicide case regarding what somebody in prison told you.
>
> [COOPER]: Um-hum.

_____

[2] "Cuddy" is spelled both "Cutty" and "Cuddy" in the record. (N.T. Trial, 10/23/12, at 324; N.T. Trial, 10/24/12, at 374; **see also** Trial Court Opinion, 12/11/13, at 23, 27).

- 4 -

> [THE COMMONWEALTH]: Who was the [d]efendant in that case?
>
> [COOPER]: James Armstrong.
>
>             \*      \*      \*
>
> [THE COMMONWEALTH]: And James Armstrong was convicted of [f]irst [d]egree [m]urder, was he not?
>
> [COOPER]: Yes, sir.

(*Id.* at 361).

Defense counsel then objected and the court sustained the objection. [(*See id.*; *see id.* at 370).] Following a lengthy discussion at sidebar, the court denied counsel's request for a mistrial, [*see id.* at 371),] and gave the following curative instruction[, which defense counsel agreed was sufficient]: "All right[.] [L]adies and gentlemen of the jury[,] you are to disregard the witness's testimony regarding the outcome of any other trial that he participated in. The witness was not present for the verdict. The witness has no idea why the jury reached whatever verdict they reached. And you jurors are to disregard that[,] and not to consider it in your deliberations." . . . (*Id.* at 375).

            \*      \*      \*

At trial, Detective [William] Gordon testified about his involvement in the investigation of the homicide of Jabree Hughes. He was shown a surveillance video of the crime scene, recounted his interviews with Alvin Herring and Steven Cooper, and testified to his knowledge of . . . []Cutty[]. (*See* N.T. Trial, 10/24/12, at 364-74). Gordon testified[, over defense counsel's objection,] that based upon the results of his investigation and his professional opinion, he believed that [Appellant's co-defendant,] Myron [Darnell] Minor[,[3]] shot [him].[[4]] (*See id.* at

---

[3] Myron Darnell Minor was also found guilty of murder, conspiracy to commit murder, and firearms not to be carried without a license for the death of

*(Footnote Continued Next Page)*

[391-]92). Gordon testified [on re-cross examination,] that he based his opinion on the fact that he didn't believe that anyone else was shooting that night. (***See id.*** at 398). . . .

The court [did] not believe that the probative value of [Detective Gordon's testimony that Myron Minor shot Appellant] was outweighed by any prejudicial impact.

(Trial Ct. Op., at 18-19, 21-24, 26-27 (citation formatting provided) (footnotes and emphasis omitted)).

On October 31, 2012, the jury found Appellant guilty of the aforementioned charges. This timely appeal[5] followed.[6]

Appellant raises the following questions for our review:

I. [Whether the] [t]rial [c]ourt err[ed] where it denied [Appellant's] request for a mistrial after the Commonwealth engaged in prosecutorial misconduct by suggesting to the jury, through the examination of witness Alvin Herring, that witnesses

*(Footnote Continued)* ───────────

Jabree Hughes. He currently has an appeal pending before this Court at docket number 444 EDA 2013.

[4] Appellant suffered a bullet wound at the crime scene. (***See*** N.T. Trial, 10/24/12, at 266). While being treated for the injury at Crozer Chester Medical Center, he told Detective Gordon and Detective Charles Bothwell that he got shot at the scene of Jabree Hughes's shooting when "two boys walked past [and] shots were fired." (***Id.*** at 265).

[5] Appellant filed separate notices of appeal for his convictions at docket numbers CP-23-CR-0004425-11 and CP-23-CR-0004413-11. On April 19, 2013, this Court consolidated the appeals *sua sponte*. (***See*** *Per Curiam* Order, 4/19/13, at 1).

[6] Pursuant to the trial court's order, Appellant filed a timely Rule 1925(b) statement on April 16, 2013. ***See*** Pa.R.A.P. 1925(b). The court filed a Rule 1925(a) opinion on December 11, 2013. ***See*** Pa.R.A.P. 1925(a).

to crimes in Chester City in general are subject to physical harm by testifying?

II.    [Whether the trial court] err[ed] where the [c]ourt permitted the Commonwealth to introduce evidence through Deputy District Attorney McDevitt in an effort to establish that the lead charge of [d]rug [d]istribution was dropped in the prosecution of Commonwealth witness Alvin Herring because the case lacked sufficient evidence, and all where the witness was not qualified to testify to same, and where no expert report was provided to counsel?

III.   [Whether the] [t]rial [c]ourt err[ed] where it denied [Appellant's] [m]otion for a [m]istrial and permitted Commonwealth witness Steven Cooper to testify that the other murder cases he testified in had resulted in convictions?

IV.    [Whether the] [t]rial [c]ourt err[ed] where the [c]ourt permitted the testimony of Detective Gordon as to who shot [Appellant], when that testimony was rampant speculation, conjecture and surmise?

(Appellant's Brief, at 3).

In Appellant's first and third issues, he challenges the trial court's denial of his motions for a mistrial. (*See id.* at 3, 9-11, 15-16).[7]

Preliminarily, we observe that "[g]ranting a mistrial is an extreme remedy, and we defer to the trial court's discretion on the matter. A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial."

---

[7] For ease of disposition, because Appellant's first and third issues challenge the trial court's denial of his motions for a mistrial, we will address them together; and then we will review the second and fourth questions, which maintain that the trial court erred in making evidentiary decisions. (*See* Appellant's Brief, at 3, 9-18).

*Commonwealth v. King*, 959 A.2d 405, 418 (Pa. Super. 2008) (citations and internal quotation marks omitted).

Further,

> [i]t is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.

*Commonwealth v. Chamberlain*, 30 A.3d 381, 422 (Pa. 2011), *cert. denied*, 132 S.Ct. 2377 (2012) (citations and internal quotation marks omitted).

In Appellant's first issue, he claims that the trial court abused its discretion in denying his motion for a mistrial on the basis of the prosecutor's question to Herring, "[W]hat happens to witnesses that come forward in the City of Chester?" (Appellant's Brief, at 9). Appellant argues that, although this question was not answered, it was "intentionally designed by a prosecutor to infect the jury wit [sic] the belief that all witnesses in Chester were subject to physical harm as a result of testifying." (*Id.*). Appellant's issue does not merit relief.

"[T]o obtain relief for alleged prosecutorial misconduct, (which is the framework in which this issue is cast), appellant must establish the

prosecutor's conduct had the unavoidable effect of prejudicing the jury . . . as to render it incapable of fairly weighing the evidence and arriving at a just verdict." ***Commonwealth v. Brown***, 987 A.2d 699, 709 (Pa. 2009), *cert. denied*, 131 S.Ct. 76 (2010) (citation and internal quotation marks omitted). Further,

> [t]he scope of redirect examination is largely within the discretion of the trial court. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Moreover, when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences.

***Commonwealth v. Fransen***, 42 A.3d 1100, 1117 (Pa. Super. 2012), *appeal denied*, 76 A.3d 538 (Pa. 2013) (citations and quotation marks omitted).

Here, Appellant has failed to establish prosecutorial misconduct where, other than general statements that he was "grotesquely prejudice[ed]" by the Commonwealth's question, he utterly fails to identify any actual prejudice. (Appellant's Brief, at 9; ***see id.*** at 9-11); ***see also Brown***, **supra** at 709. In fact, Herring did not respond to the Commonwealth's question before the court sustained defense counsel's objection, and "[i]t is difficult to see how the jury could have drawn any inferences whatever from the unanswered question alone. Therefore, the question had no prejudicial effect." ***Commonwealth v. Garcia***, 479 A.2d 473, 479-80 (Pa. 1984)

(concluding that defendant not prejudiced by prosecutor's question where witness did not respond before objection sustained).

Additionally, defense counsel cross-examined Herring raising the inference that he had not come forward sooner because he was fabricating his version of events in return for a plea deal. (*See* N.T. Trial, 10/23/12, at 93-94). In response, the Commonwealth asked the question in an attempt "to dispel any unfair inferences" raised by Appellant's attorney. *Fransen*, *supra* at 1117 (citation omitted); (*see also* N.T. Trial, 10/23/12, at 187).

Accordingly, we conclude that the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial. *See Chamberlain*, *supra* at 422. Appellant's first issue does not merit relief.

In his third issue, Appellant claims that the trial court abused its discretion in denying his motion for a mistrial after it "permit[ed] witness Steven Cooper to testify that other murder cases in which he had testified resulted in convictions." (Appellant's Brief, at 15). Specifically, Appellant argues, "[a]ll that the testimony did was to impermissibly bolster the credibility of Steven Cooper." (*Id.* at 16). We disagree.

It is well-settled that:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. . . . Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Simpson*, 754 A.2d 1264, 1272 (Pa. 2000), *cert. denied*, 533 U.S. 932 (2001) (citations omitted).

In the case before us, Appellant has failed to demonstrate any actual prejudice to support his claim, and instead engages in speculation. (*See* Appellant's Brief, at 15-16).

Additionally, the record reveals that, on cross-examination, defense counsel elicited from Cooper that he had given the Commonwealth information in four homicide cases, and was scheduled to testify against an individual named James Armstrong. (*See* N.T. Trial, 10/23/12, at 331-39). He asked the witness, "you're something of a professional testifier in [h]omicide cases, aren't you?" (*Id.* at 331). On cross-examination, the Commonwealth established that Cooper had already testified in Armstrong's case, and that Armstrong was convicted of first degree murder. (*See id.* at 361). Thereafter, the trial court sustained defense counsel's objection, denied his motion for a mistrial, and gave the jury a curative instruction advising it "to disregard [Cooper's] testimony regarding the outcome of any other trial that he participated in [because he] was not present for the verdict [and] has no idea why the jury reached whatever verdict they reached." (*Id.* at 375; *see id.* at 371, 375). Defense counsel agreed that the court's curative instruction was sufficient. (*See id.*).

Therefore, Appellant has failed to prove that he was prejudiced by Cooper's testimony about another verdict, where the court struck the

response, and gave the jury a curative instruction that it is presumed to have followed. **See Simpson**, **supra** at 1272. Accordingly, the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial on this basis. **See Chamberlain**, **supra** at 422. Appellant's third issue lacks merit.

In Appellant's second and fourth issues, he argues that the trial court erred in permitting certain testimony by Commonwealth witnesses. (**See** Appellant's Brief, at 3, 12-14, 17-18). We disagree.

Our standard of review of the trial court's admission of evidence is well-settled:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

**Commonwealth v. Akbar**, 91 A.3d 227, 235 (Pa. Super. 2014) (citation omitted).

Further,

> Evidence may . . . be excluded if the probative value is outweighed by the danger of unfair prejudice. Pa.R.E. 403. Evidence is not unfairly prejudicial simply because it is harmful to the defendant's case. The trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand. Exclusion of evidence on the grounds that it is prejudicial is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case.

*Commonwealth v. Flamer*, 53 A.3d 82, 88 n.7 (Pa. Super. 2012) (case citations and quotation marks omitted).

Here, in his second issue, Appellant maintains that the trial court abused its discretion when it "permitted Deputy District Attorney McDevitt to offer improper and irrelevant opinion evidence with regard to the reasons for the voluntary dismissal of [possession with intent to deliver cocaine] charges against Commonwealth witness Alvin Herring." (Appellant's Brief, at 12). Specifically, Appellant argues that "[i]t was important for the jury to know that Herring had received a plea bargain in which serious charges were dropped to much more minor charges. What McDevitt believed was irrelevant." (*Id.* at 14). Appellant's issue lacks merit.

Pursuant to Pennsylvania Rule of Evidence 602, a fact witness "may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Pa.R.E. 602. Also, as we stated above, "when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue in order to dispel any unfair inferences." *Fransen*, *supra* at 1117 (citation omitted).

In the present case, Deputy District Attorney McDevitt, who was in charge of the prosecution at Herring's trial, testified about his personal knowledge of the addendum to Herring's plea agreement. (*See* N.T. Trial,

- 13 -

10/23/12, at 217, 230); *see also* Pa.R.E. 602. He stated that, pursuant to the addendum, which McDevitt had signed himself, Appellant would plead guilty to lesser charges and, in return, the Commonwealth only would inform the sentencing judge of his cooperation in this case, but those were the entire terms of the agreement. (*See id.* at 219). On cross-examination, defense counsel established that, with the Commonwealth's approval, Herring pleaded guilty to lesser charges that he faced, and that, if he did not comply with the agreement's terms, it would be void. (*See id.* at 220-25). Co-defendant's counsel thoroughly questioned McDevitt about the applicable sentencing guidelines for the lesser charges to which he pleaded and for the felony charge that was *nolle prossed* pursuant to the agreement. (*See id.* at 225-28). She established that, pursuant to the plea agreement, Herring was required to cooperate with the Commonwealth in this case. (*See id.*). On re-direct, in an effort to dispel any unfair inference created by defense counsels' questions regarding the plea agreement's terms, the prosecutor asked McDevitt why the felony charge had been withdrawn, and McDevitt stated that "[t]here was insufficient evidence to prove that charge to the Court of Common Pleas." (*Id.* at 232).

Based on the foregoing, we conclude that Appellant's contention that McDevitt impermissibly offered expert testimony is belied by the record, in which he testified as a fact witness with personal knowledge of Herring's plea agreement and case. *See* Pa.R.E. 602. Additionally, the trial court

properly exercised its discretion in denying Appellant's motion for a mistrial on the basis of McDevitt's testimony, where such testimony was relevant to rebut the inference raised by defense counsel that the felony charges against Herring were withdrawn pursuant to the plea agreement. **See Akbar**, **supra** at 235; **Fransen**, **supra** at 1117. Appellant's second issue does not merit relief.

In his fourth issue, Appellant argues that the trial court erred when it "permit[ed] Sergeant Gordon to testify as to rank speculation, to wit, that [Appellant] was shot by codefendant Myron Minor." (Appellant's Brief, at 17). We disagree.

At trial, Detective Gordon testified about his involvement in the investigation of the homicide of Jabree Hughes. The Commonwealth showed him video surveillance of the crime scene, and he recounted his interviews with Herring and Cooper. (**See** N.T. Trial, 10/24/12, at 364-74). On cross-examination, defense counsel reviewed Detective Gordon's report and notes, and asked the names of individuals who were identified during the investigation as possibly having been involved in the shooting. (**See id.** at 377-86). Detective Gordon testified on cross that his notes stated that Herring was a potential suspect. (**See id.** at 385). On redirect, Detective Gordon clarified that, based on the result of his further investigation and his professional opinion, he "absolutely" did not believe Herring shot Appellant. (**Id.** at 391). The Commonwealth asked Detective Gordon who he believed

- 15 -

shot Appellant, and he stated that "I think he was shot by Myron Minor." (***Id.*** at 392; ***see id.*** at 391).  On re-cross examination, Detective Gordon admitted that he did not have any facts or eyewitnesses to support his conclusion.  (***See id.*** at 398-99).

Based on the foregoing, despite Detective Gordon's admission on re-cross that he did not have facts or eyewitnesses to support his conclusion, the trial court properly allowed the Commonwealth to elicit further testimony on subjects covered on cross-examination.  Detective Gordon's testimony was not mere speculation where he was involved in the investigation, reviewed video surveillance, and had conducted interviews with witnesses. It was for the jury to decide how much weight to give the testimony, ***see Commonwealth v. Moreno***, 14 A.3d 133, 135 (Pa. Super. 2011), *appeal denied*, 44 A.3d 1161 (Pa. 2012), and the trial court did not abuse its discretion in allowing the testimony where it was relevant to the rebuttal of any inferences raised by defense counsel on cross-examination that Herring shot Jabree Hughes.  ***See Akbar***, ***supra*** at 235; ***Flamer***, ***supra*** at 88 n.7; ***Fransen***, ***supra*** at 1117.  Appellant's fourth issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/2015