J-S29022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| NESBITT FOWLER | |
| Appellant | No. 3722 EDA 2015 |

Appeal from the Judgment of Sentence dated November 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007715-2014

BEFORE: LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED JUNE 22, 2017**

Appellant, Nesbitt Fowler, appeals from the judgment of sentence imposed after the trial court convicted him of aggravated assault, simple assault and recklessly endangering another person.[1]  We affirm.

Appellant's convictions arose from an incident involving his girlfriend, Keshiva Poindexter, on June 7, 2014.  Prior to trial, Appellant filed a motion in *limine* in which he sought the court's permission to question Ms. Poindexter about a video Ms. Poindexter allegedly recorded of Appellant and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2702(a), 2701(a), and 2705.

posted on the Internet.[2]   The trial court, in an order by the Honorable Carolyn H. Nichols, granted Appellant's motion in *limine* on July 16, 2015.

On July 27, 2015, the Commonwealth filed a motion to admit prior "evidence that [Appellant] had attacked the victim on six prior occasions to show, *inter alia*, intent, and absence of mistake, or to rebut anticipated defense."   Commonwealth Brief at 3; **see also** Commonwealth Motion to Admit Other Acts Evidence, 7/27/15.   The motion was heard prior to trial on September 10, 2015, by the Honorable Steven F. Geroff, sitting as the pre-trial motions judge.[3]   At the hearing, the prosecutor conceded:

> The main reason, your honor, that the Commonwealth seeks to admit [evidence of Appellant's prior bad acts] is that there was a motion in limine.  . . .  [T]here is a motion in limine where Judge Nichols granted [Appellant's] motion to allow the defense to question the complaining witness on a video that was posted of [Appellant] on YouTube.  Essentially in a dance where he proceeded to take off his clothes.
>
> And based on that ruling, Judge Nichols ruled that it was allowed to establish motive and bias on the part of the complainant.  So in response, I filed the other acts motion to allow these alleged other acts to come into evidence to refute that bias or motive.

---

[2] Appellant's motion in *limine* appears to have been verbal.  Although there is no physical motion in the record, its existence is not disputed and is verified by the trial court's two orders, one on June 25, 2015 stating that "Defense Motion in Limine is Held Under Advisement" and a second on July 16, 2015 stating "Defense Motion in Limine is Granted.  Defense may ask questions to witness about video.  Trial date to remain 9/10/15."

[3] Judge Geroff heard the Commonwealth's pre-trial motion because Appellant had elected to proceed at a bench trial before Judge Nichols.

N.T., 9/10/15, at 3-4. Counsel for Appellant responded that "there's no exception that says other acts can come in to bolster the credibility of the witness." *Id.* at 8. Appellant's counsel then asked whether "Your Honor is following my logic?" to which the court responded "I do." *Id.* at 10. However, the court continued, "Let's assume that video never happened," and it then reviewed the prior acts set forth in the Commonwealth's motion. *Id.*

At the end of the hearing, Judge Geroff permitted the Commonwealth to present evidence of two of the prior acts: (1) an incident in the summer of 2013 when Appellant allegedly strangled Ms. Poindexter until she lost consciousness, and (2) an incident the following spring when Appellant allegedly punched Ms. Poindexter on the forehead. N.T., 9/10/15, at 14-15; *see also* Trial Court Opinion, 6/30/16, at 3-4. The court stated:

> Certainly anything [Ms. Poindexter] testifies to is subject to great question as to her credibility. But I'm ready to rule. As to the December 2012, January 2-13, I will not permit that. The summer of 2013 . . . I would permit her to testify to being strangled by [Appellant] and losing consciousness. . . . I can assure you, you can use your cross-examination to show this lady is making all of this up. . . . So I won't allow December 2013. Clearly, we're not allowing February 2014. And I will allow the allegation that during April and May of 2014, [Appellant] allegedly punched the complainant on the forehead. I'll permit that.
>
> So now you got just two acts, two alleged acts.

N.T., 9/10/15, at 13-15.

The case proceeded to trial. Judge Nichols, sitting as the trial court, summarized the trial court's factual findings as follows:

On June 7, 2014, the complainant, Keshiva Poindexter, contacted her boyfriend, [Appellant], through text message regarding the return of her cell phone. At some point that evening, Ms. Poindexter drove to [Appellant's] house at 1638 Frazier St. in Philadelphia. She entered the residence through the open front door and found [Appellant's] cousin laying on a couch. She asked the cousin where [Appellant] was and he replied he didn't know. Ms. Poindexter then proceeded upstairs where she encountered another female. Again she asked where [Appellant] was and if she had seen her cell phone. The cousin then informed Ms. Poindexter that [Appellant] would be returning shortly. Six minutes after she arrived, [Appellant] returned to the house. A verbal argument ensued between Ms. Poindexter and [Appellant]. [Appellant] then grabbed Ms. Poindexter by the hand and punched her with a closed fist several times in the face, specifically her eyes. Ms. Poindexter then blacked out. She was awoken by [Appellant's] father slapping her. She then ran outside, where she called her friend for help and then passed out again. At some point police were called and she was taken to the University of Pennsylvania Hospital. The damage to Ms. Poindexter's eyes [was] extensive and required several surgeries with several more in the future. Additionally, there was permanent damage to her optical nerves.

Trial Court Opinion, 6/30/16, at 2 (citations to notes of testimony omitted).

The trial court rendered its guilty verdicts on September 10, 2015 and deferred sentencing for the preparation of a pre-sentence investigation report. On November 9, 2015, the trial court sentenced Appellant to 4½ to 10 years' incarceration. Appellant then filed this timely appeal, in which he presents a single issue for our review:

Did not the lower court err in allowing the Commonwealth to present evidence of other acts by [Appellant]?

Appellant's Brief at 3.

- 4 -

Appellant states that the Commonwealth sought to introduce evidence of his "uncharged alleged bad acts" against Ms. Poindexter "to bolster [Ms. Poindexter]'s credibility in the face of the defense evidence of her motivation to lie." Appellant's Brief at 9. The essence of Appellant's claim is that the evidence was improperly admitted because it was "clearly offered for the purpose of trying to paint [Appellant] as having bad character and a propensity for violence [and n]one of the allowable justifications for the introduction of other bad acts evidence apply here." *Id.* at 13. The Commonwealth counters that the evidence of the two prior acts was properly admitted because "case law permits the admission of evidence of previous assault of the same victim to prove ill-will, malice, and intent, among other purposes." Commonwealth Brief at 4.

We review challenges to the admission of "other acts" evidence for an abuse of discretion. *Commonwealth v. Patterson*, 91 A.3d 55, 68 (Pa. 2014) ("The admission of evidence of prior bad acts is solely within the discretion of the trial court, and the court's decision will not be disturbed absent an abuse of discretion"), *cert. denied*, 135 S.Ct. 1400 (2015). The Pennsylvania Supreme Court has explained:

> An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. Typically, all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the

prejudice/probative value weighing which attends all decisions upon admissibility. *See* Pa.R.E. 401; Pa.R.E. 402.

*Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007) (internal quotations and some citations omitted).

Rule 404(b) of the Rules of Evidence provides:

**(b) Crimes, Wrongs or Other Acts.**

*(1)*    *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2)*    *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.   In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Under this rule, evidence of other bad acts or crimes that are not currently being prosecuted against the defendant are not admissible against the defendant to show his bad character or propensity to commit criminal acts. *Commonwealth v. Flamer*, 53 A.3d 82, 87 (Pa. Super. 2012).  Evidence of other bad acts or crimes may be admissible, however, where the evidence is used for some other purpose.  *Id.*  Such purposes explicitly include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."   Pa.R.E. 404(b)(2); *see, e.g., Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) ("Prior acts are admissible to show ill will, motive, malice, or the nature of the relationship between the defendant and the decedent").   "[A]dmission for

these purposes is allowable only whenever the probative value of the evidence exceeds its potential for prejudice." ***Commonwealth v. Briggs***, 12 A.3d 291, 337 (Pa. 2011). "The admission of evidence becomes problematic only when its prejudicial effect creates a danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." ***Commonwealth v. Sherwood***, 982 A.2d 483 n.25 (Pa. 2009) (citation omitted).

The trial court provided the following reasoning to support admission of the contested evidence:

> The prior bad acts of [a d]efendant are admissible to show intent when intent or knowledge is an essential element of the crime charged. ***Commonwealth v. Sparks***, 342 Pa. Super. 202, 206-207, 492 A.2d 720, 723 (1985) (citation omitted). Here [Appellant] is charged with Aggravated Assault, which requires a mens rea of intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. The prior behavior is similar to the current charge and shows the intent of [Appellant] to attempt to cause serious bodily injury to Ms. Poindexter. It also shows that there was a hostile relationship between [Appellant] and Ms. Poindexter and that [Appellant] intentionally wanted to cause serious bodily injury to Ms. Poindexter.
>
> The prior bad acts of [Appellant] were also properly admitted to show that there was an absence of mistake regarding the assault of Ms. Poindexter. In the case, ***Commonwealth v. Ulatoski***, 472 Pa. 53, 371 A.2d 186 (1977), the defendant was charged with murder for shooting his wife. At trial he claimed that the shooting was an accident. The Pennsylvania Supreme Court affirmed the trial court's ruling that evidence showing prior incidents of physical abuse by the defendant towards his wife were relevant and admissible to prove that the shooting was not an accident. Similar to the present case, [Appellant] might have claimed at trial that the injuries were accidental in nature. However the prior bad acts

- 7 -

evidence was relevant to show that in the past [Appellant] had assaulted Ms. Poindexter and was admissible to rebut such a claim of mistake.

The two incidents that were admitted were also very close in time to the current incident and were not too remote to be admissible. Additionally, their prejudicial effect to [Appellant] was far outweighed by their probative value in proving the essential elements of the current charge. Therefore the admission of the two prior incidents of assault by [Appellant] were properly admitted to show intent and absence of mistake.

Trial Court Opinion, 6/30/16, at 4-5. Upon review, we discern no abuse of discretion by the trial court. As noted by the Commonwealth, case law supports admission of the evidence at issue here. *See* Commonwealth Brief at 6, *citing Commonwealth v. Drumheller*, 808 A.2d 893, 905 (Pa. 2002) (evidence of prior abuse of victim admissible to prove appellant's motive, malice, intent, and ill-will toward the victim); *Commonwealth v. Ulatoski*, 371 A.2d 186, 190 (Pa. 1977) (same) (collecting cases); *Commonwealth v. Powell*, 956 A.2d 406, 419 (Pa. 2008) (evidence of defendant's anger, impatience, and dislike of victim admissible to establish motive, intent, and malice in harming that victim).

The evidence of Appellant's two prior acts, although not charged crimes, was admissible to relate the "complete story" and "natural development" of the relationship between Appellant and Ms. Poindexter. In *Commonwealth v. Lark*, 543 A.2d 491 (Pa. 1988), the Supreme Court explained:

Evidence of distinct crimes are not admissible against a defendant being prosecuted for another crime *solely* to show his

bad character and his propensity for committing criminal acts. However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character. . . . [One] "special circumstance" where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. This special circumstance, sometimes referred to as the "res gestae" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.,* evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place." McCormick, *Evidence,* § 190 (1972 2d ed.); **see also Commonwealth v. Coyle**, 415 Pa. 379, 389–91, 203 A.2d 782, 787 (1964) (evidence of other crimes admissible as these crimes were interwoven with crimes for which defendant was being prosecuted).

543 A.2d at 497 (some citations omitted). The rationale of **Lark** fully supports admissibility of the Commonwealth's evidence here, as evidence of Appellant's past conduct toward Appellant, if believed by the fact-finder, would support the view that the criminal activity at issue was merely a part of his ongoing pattern of conduct toward Ms. Poindexter — an earlier chapter of the "complete story."

Finally, even if we were to accept Appellant's argument that the admission of the prior acts was improper, such admission would constitute harmless error. Chief Justice Saylor recently explained:

It is well-established that an erroneous evidentiary ruling by a trial court does not require us to grant relief where the error was harmless. **Commonwealth v. Young**, 561 Pa. 34, 748 A.2d 166, 193 (1999). Specifically, we have held that harmless error exists where: (1) the error did not prejudice the defendant or

the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming that the prejudicial effect of the error by comparison could not have contributed to the verdict. *Id.* We have explained that the doctrine of harmless error is a "technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. Its purpose is premised on the well-settled proposition that a defendant is entitled to a fair trial but not a perfect one." *Commonwealth v. Allshouse*, 614 Pa. 229, 36 A.3d 163, 182 (2012) (citation and internal quotations omitted).

*Commonwealth v. Hicks*, 156 A.3d 1114, 1139–40 (Pa. 2017) (Saylor, J., concurring); *see also Commonwealth v. Melvin*, 103 A.3d 1, 19-20 (Pa. Super. 2014). We are confident that any error in admitting the evidence at issue here would have been harmless.

Ms. Poindexter was the only witness to testify at trial. She testified at length regarding the incident that occurred on June 7, 2014, and the physical evidence of her injuries. For instance, she stated:

> As we were arguing, [Appellant] attacked me with punching me in the face. I can't recall how many times. I just know I blacked out. And when I woke up my eye was shut and I thought he was pouring water on me, but there was blood gushing from all over my face.

N.T., 9/10/15, at 14. Ms. Poindexter stated that she spoke with police on the scene after she called 911. N.T., 9/10/15, at 112-113. She told police that she had been attacked and pointed to the house where it happened. *Id.* at 113. She stated that the police did not arrest Appellant at that time because "he had walked off by then." *Id.*

- 10 -

Ms. Poindexter testified about her broken orbital bone, permanently damaged eye nerves, and three surgeries she had prior to trial, with more to follow. *See*, *e.g.*, N.T., 9/10/15, at 20-23. Ms. Poindexter gave the following description of her injuries:

> WITNESS: As you can see, [my eye is] damaged. It was worse than this. This is from the third surgery. He moved it and moved it a little bit, but when it first happened, my eye was all the way. You didn't even see the black part. I thought they – that's why they were saying I was blind. I thought they weren't going to be able to fix it at all.
>
> COMMONWEALTH: You can put your hair back if you'd like.
>
> WITNESS: This is how I wear my hair now to cover my appearance.

N.T., 9/10/15, at 23-24. Without objection, the Commonwealth introduced exhibits documenting Ms. Poindexter's injuries, including a police report and photographs.

At closing, Appellant sought to discredit Ms. Poindexter as being an inconsistent and untruthful witness who "went [to Appellant's house] to start trouble." N.T., 9/10/15, at 132. Specifically, Appellant's counsel stated that "it was to cause some sort of trouble. And I submit to Your Honor that when she found [Appellant] was with another woman, something happened. Something happened and she ended up being punched two or three times in the face." *Id.* Then, in arguing that Appellant lacked the requisite intent to cause Ms. Poindexter serious bodily injury, Appellant's counsel added:

- 11 -

"[t]wo to three punches during some sort of confrontational issue, during some sort of confrontational problem while somebody is at your house uninvited is not proof that [Appellant] had specific intent to cause serious bodily injury, or, even if serious bodily injury was caused, that he did so intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life." *Id.* at 134.

In light of the evidence and the defense presented by Appellant's counsel at closing, we conclude that any error in the admission at trial of prior acts involving Appellant and Ms. Poindexter would have been harmless.

Accordingly, because Appellant's evidentiary claim is without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2017