J-S08023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL WILKERSON | |
| Appellant | No. 1786 EDA 2014 |

Appeal from the PCRA Order of May 22, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0006001-2010

BEFORE:  DONOHUE, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.:                    **FILED MARCH 13, 2015**

Michael Wilkerson appeals the May 22, 2014 order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46, without a hearing.  We affirm.

Upon review of Wilkerson's direct appeal, a previous panel of this Court summarized the factual history of this case as follows:

> On September 18, 2009, [Wilkerson] gave a salesman for Fort Washington Mercedes Benz a check for $111,000[.00] in payment for a Mercedes Benz S550 automobile.  Following the transaction, [Wilkerson] left the dealership with the car.  After a number of days, the salesman was notified that the check had not cleared the bank.  In fact, the account upon which the check was drawn had been closed for eight months.  The salesman contacted [Wilkerson,] who explained that he had had a disagreement with his wife, and she had taken money out of the account.  The salesman had previously sold cars to [Wilkerson] and was familiar with both him and his wife.  Over the next few weeks, the salesman attempted to offer other options to [Wilkerson], such as paying part of the purchase price and financing the rest.  Nonetheless, although [Wilkerson] promised

to come to the dealership with a replacement check, [Wilkerson] did nothing and did not immediately return the car. Ultimately, the police were contacted.

Approximately three weeks after the purchase, [Wilkerson] returned the car, but merely left the car's keys and books on the counter at the dealership and left without resolving the matter. Obviously, the value of the automobile was greatly diminished. The salesman later learned that [Wilkerson] had been trying to trade the vehicle with a Lexus car dealer. Also[,] a witness from West Chester Jaguar-Land Rover testified that [Wilkerson] tried to sell the vehicle to that dealership for $115,000[.00].

A criminal complaint [charging Wilkerson with one count of bad checks in violation of 18 Pa.C.S. § 4105] was filed against [Wilkerson] on December 29, 2009. Despite the Commonwealth's due diligence[,] [Wilkerson] avoided apprehension until he was arrested on August 2, 2010. The trial court listed and relisted [Wilkerson's] trial for several dates in 2011[,] including February 14, March 7, and March 14. Ultimately, in May 2011, because of trial docket congestion, [Wilkerson's] trial was delayed until August. [Wilkerson's] trial commenced on August 8, 2011.

*Commonwealth v. Wilkerson*, No. 3325 EDA 2011, slip op. at 1-3 (Pa. Super. Oct. 31, 2012) (footnote omitted).

Wilkerson premised his defense upon his claims that he mistakenly issued the check on a closed account, and that he believed that the check was connected to an active account that contained sufficient funds. Wilkerson claimed that he learned of his mistake shortly after the transaction, and that he promptly contacted the salesperson to inform him of the mistake and to instruct the dealership to not attempt to deposit the check. Wilkerson stated that, during these discussions, he communicated his intent to deliver a replacement check. His subsequent attempts to correct the error, Wilkerson claimed, were frustrated by his wife, who

removed money from the active account because of her anger about the purchase. Having found no acceptable means of compensating the dealership, Wilkerson returned the vehicle, but did not reimburse the dealership for the depreciation incurred during the time that the vehicle was in his possession.

In support of his "mistake" defense, Wilkerson testified on his own behalf and presented the corroborating testimony of the investigating officer, the dealership's manager, and the dealership's finance manager. The defense also presented physical evidence of Wilkerson's driver's license, his insurance card, the affidavit of probable cause, and a deposit slip from Wachovia Bank, which showed the date on which the dealership attempted to deposit the check at issue.

The Commonwealth presented the testimony of the salesperson, Fred Mielke, who testified that Wilkerson did not contact him to inform him of the mistake, but rather that he sought out Wilkerson after he learned that Wilkerson's bank would not honor the check. Mielke stated that the dealership's management told him several days after the sale that Wilkerson's check would not clear. Regarding the dealership's attempt to deposit the check, Mielke stated that "[w]e would have cashed it probably the next day after the transaction, it would have been deposited into the bank." Notes of Testimony ("N.T."), 8/8/2011, at 47. Mielke testified that he provided Wilkerson with numerous options to remedy the situation, but that Wilkerson was unwilling or unable to compensate the dealership.

Furthermore, the Commonwealth presented the testimony of the chief operating officer for a different luxury car dealership, who stated that Wilkerson had attempted to trade or sell the vehicle to that dealership.

In its rebuttal case, the Commonwealth also introduced, by stipulation, Wilkerson's prior convictions for theft by deception[1] and forgery.[2] The trial court instructed the jury on the presumptions contained in the bad checks statute, telling the jurors that, if they were satisfied with the fact that Wilkerson's account was closed at the time of the transaction, then they could infer that Wilkerson possessed the requisite knowledge for purposes of the bad checks statute. *See* N.T., 8/9/2011, at 54, 63.

Following a two-day jury trial, Wilkerson was convicted of bad checks. On October 21, 2011, the trial court sentenced Wilkerson to one-and-one-half to seven years' incarceration. On October 31, 2012, this Court affirmed Wilkerson's judgment of sentence. Wilkerson filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied on October 29, 2013. On January 15, 2014, Wilkerson timely filed a *pro se* PCRA petition, wherein he alleged that his trial counsel was ineffective for failing to investigate and acquire the bank records associated with the check. Wilkerson subsequently was appointed new counsel for the purposes of his

---

[1]    18 Pa.C.S. § 3922.

[2]    18 Pa.C.S. § 4101.

PCRA petition, but that attorney sought leave to withdraw from the representation, and filed a **Turner**/**Finley**[3] "no-merit" letter on April 22, 2014. On April 24, 2014, the PCRA court issued Wilkerson a notice of intent to dismiss his petition without a hearing pursuant to Pa.R.Crim.P. 907, and Wilkerson filed a response on May 13, 2014. On May 22, 2014, the PCRA court issued a final order dismissing Wilkerson's petition.

Wilkerson timely filed a *pro se* notice of appeal on June 17, 2014. On June 19, 2014, the PCRA court directed Wilkerson to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Because Wilkerson retained new counsel, the PCRA court granted Wilkerson an extension of time to file the concise statement. The PCRA court set July 14, 2014 as the deadline, and Wilkerson timely filed a concise statement on that date. In accordance with Pa.R.A.P. 1925(a), the PCRA court issued an opinion in support of its order on July 28, 2014.

Wilkerson raises the following issue for our review:

> Did the trial [c]ourt err in dismissing the PCRA [p]etition for [i]neffective [a]ssistance of [c]ounsel?

Brief for Wilkerson at 4.

Our standard of review for the dismissal of a PCRA petition is well-settled. "In reviewing the denial of PCRA relief, we examine whether the

---

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014) (internal quotation marks and citation omitted). "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). Regarding the granting of an evidentiary hearing on a PCRA petition:

> Where a PCRA petition does not raise a genuine issue of material fact, the reviewing court is not required to hold an evidentiary hearing on the petition. Thus, to entitle himself to a hearing, an appellant must raise an issue of fact, which, if resolved in his favor, would justify relief.

***Commonwealth v. Simpson***, 66 A.3d 253, 260-61 (Pa. 2013) (internal quotation marks, bracketed material, and citations omitted).

To prevail on a claim of ineffective assistance of counsel, "the petitioner must show: that the underlying legal claim has arguable merit; that counsel had no reasonable basis for his or her action or omission; and that the petitioner suffered prejudice as a result." ***Commonwealth v. Bardo***, 105 A.3d 678, 684 (Pa. 2014) (citation omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." ***Commonwealth v. Burno***, 94 A.3d 956, 972 (Pa. 2014) (citation omitted). Regarding appellate review of a claim of ineffectiveness, "[a] court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary

element of the ineffectiveness test, the court may proceed to that element first." ***Commonwealth v. Tharp***, 101 A.3d 736, 747 (Pa. 2014) (citations omitted).

Wilkerson was convicted of one count of bad checks in violation of 18 Pa.C.S. § 4105. In addition to the elements of the offense, which require the issuer's knowledge that the check will not be paid, the statute provides a number of presumptions from which the fact-finder may infer that the issuer possessed such knowledge. 18 Pa.C.S. § 4105(b). These presumptions played an important role in Wilkerson's trial and are central to the arguments that he advanced in his PCRA petition. The crime of bad checks is defined, in pertinent part, as follows:

> **(a) Offense defined.—**
>
> (1) A person commits an offense if he issues or passes a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.
>
> (2) A person commits an offense if he, knowing that it will not be honored by the drawee, issues or passes a check or similar sight order for the payment of money when the drawee is located within this Commonwealth. A violation of this paragraph shall occur without regard to whether the location of the issuance or passing of the check or similar sight order is within or outside of this Commonwealth. It shall be no defense to a violation of this section that some or all of the acts constituting the offense occurred outside of this Commonwealth.
>
> **(b) Presumptions.—**For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, the following shall apply:

(1) An issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

(i) payment was refused because the issuer had no such account with the drawee at the time the check or order was issued; or

(ii) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal.

Notice of refusal may be given to the issuer orally or in writing by any person. Proof that notice was sent by registered or certified mail, regardless of whether a receipt was requested or returned, to the address printed on the check or, if none, then to the issuer's last known address, shall raise a presumption that the notice was received.

18 Pa.C.S. § 4105.

Wilkerson argues that his trial counsel was ineffective for failing to conduct a reasonable investigation into the bank account activity associated with the check in question. Brief for Wilkerson at 9-19. Specifically, Wilkerson suggests that "[h]ad counsel investigated the history of the bank records, he would have found that the check . . . was never presented to the dealership's bank for payment; thus it was impossible for the check to be returned." *Id.* at 10. Therefore, Wilkerson argues, the statutory presumptions should not have applied to his circumstances because he was not provided notice that payment on his check had been refused. Wilkerson suggests that, because the bank records would have corroborated his version of the events, they would have confirmed his defense and negated the intent element of the crime of bad checks. Wilkerson argues that his

counsel's failure to acquire these records constituted ineffective assistance of counsel, and thus the PCRA court erred in dismissing his petition without a hearing. We disagree.

Because we conclude that counsel's acquisition and presentation of the bank records would not have created a reasonable likelihood that the result of the trial would have been different, we begin and end our analysis with the "prejudice" prong of the ineffectiveness claim. *See Tharp*, 101 A.3d at 747. "Respecting prejudice, we employ the *Strickland*[4] actual prejudice test, which requires a showing of a reasonable probability that the outcome of the proceeding would have been different but for counsel's constitutionally deficient performance." *Commonwealth v. Daniels*, 104 A.3d 267, 281 (Pa. 2014). "[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Spotz*, 84 A.3d at 312 (citation omitted).

At the outset, we note that Wilkerson has not provided the bank records that he claims his attorney should have acquired, so we cannot be certain of their contents.[5] Wilkerson claims that "the bank records would

---

[4] *See Strickland v. Washington*, 466 U.S. 668 (1984).

[5] For the purpose of our prejudice analysis, we are assuming, *arguendo*, that the bank records would have contained the information that Wilkerson suggests. However, we note that Wilkerson's failure to present the bank records before this Court raises doubts about whether we could determine that his claim has arguable merit. Regardless, because we conclude that

*(Footnote Continued Next Page)*

have shown that the check presented at trial was never deposited or cashed; therefore, there was no way that the dealership provided notice to Wilkerson as they claimed." Brief for Wilkerson at 17. This argument is somewhat curious, because Wilkerson introduced the dealership's deposit slip into evidence at trial for the purpose of demonstrating the length of time between the transaction and the dealership's attempt to deposit the check. Wilkerson passed the check on September 18, 2009, and the dealership attempted to deposit the check on September 28, 2009.

Wilkerson suggests that his counsel should have obtained both Wilkerson's and the dealership's bank records. Brief for Wilkerson at 12. We cannot understand what benefit Wilkerson would have received from the presentation of his own bank records. Wilkerson's bank records likely would have shown merely that Wilkerson's account had been closed, which is a fact not in dispute. Wilson admitted at trial that the account had been closed at the time of the transaction. N.T., 8/8/2011, at 110. Moreover, the fact that Wilkerson's account was closed was an essential component of his "mistake" defense. The dealership's bank records, by contrast, potentially would have shown that there were no attempts to deposit Wilkerson's check until September 28, 2009. While the length of time between the transaction and the attempted deposit may have cast doubt upon Mielke's recollection of the

_(Footnote Continued)_ ———————————————

Wilkerson did not suffer prejudice from his trial counsel's omission, we need not address the arguable merit element of Wilkerson's ineffectiveness claim.

events, it is ultimately not of consequence. Even if the dealership's bank records supported Wilkerson's narrative, they do not bear upon the determinative question of whether Wilkerson knew that he was passing the check on a closed account at the time of the transaction.

The Commonwealth contends that presentation of the bank records would have been needlessly cumulative of the other evidence presented by the defense. Brief for Commonwealth at 9-10. We define cumulative evidence as "additional evidence of the same character as existing evidence and that supports a fact established by the existing evidence." *Commonwealth v. Flamer*, 53 A.3d 82, 88 n.6 (Pa. Super. 2012). Again, because the records are not before this Court, we cannot be certain of their contents, but we infer that the bank records could have been stronger evidence than the deposit slip. The deposit slip accounts only for one attempt to deposit the check, on one day, at one time. The bank records potentially could have accounted for all of the other time between the transaction and the date reflected on the deposit slip. Undeniably, the bank records, had they been produced, would be better characterized as "corroborative" evidence, which is "[e]vidence that strengthens or bolsters existing evidence." *Id.* Despite the bank records' potential for corroborating the evidence of the deposit slip, we are confident that the presentation of the bank records would not have changed the outcome of the verdict. The records merely would have supported a proposition already suggested by other evidence and, more importantly, they would not have

been probative of the ultimate factual determination—Wilkerson's knowledge at the time of the transaction.

The parties have argued at length about the applicability of the statutory presumptions, which provide that the issuer may be presumed to know that a check will not be paid if **payment was refused** by the drawee due to the absence of an account or the lack of sufficient funds. 18 Pa.C.S. § 4105(b)(1) (emphasis added). As noted in the statute, "[n]otice of refusal may be given to the issuer orally or in writing by any person." *Id.* Viewing the evidence in the light most favorable to the Commonwealth as the prevailing party at trial, as we must, Mielke's testimony established that he orally provided Wilkerson with notice that payment on the check was refused. As we noted in affirming Wilkerson's conviction on direct appeal:

> [Mielke] testified that the dealership presented the check to the bank and it was not honored. The jury could justifiably conclude from this testimony alone that the dealership presented the check to its own bank, Wachovia Bank, which in turn presented it to Bank of America, the drawee bank, and that Bank of America refused to honor the check. Thus, the evidence was sufficient to support a conviction for bad checks.

*Wilkerson*, No. 3325 EDA 2011, slip op. at 15. We understand that, if the bank records were able to demonstrate conclusively that there was no attempt by the dealership to deposit the check in the days following the transaction, then those records possibly would have detracted from the

credibility of Mielke's testimony and bolstered Wilkerson's narrative.[6] However, the defense presented three witnesses that contradicted Mielke's testimony, in addition to the deposit slip which shows the date of the attempted deposit, which was several days after Mielke claimed. Nevertheless, the jury credited the Commonwealth's version of the facts. We discern no reason to believe that a piece of documentary evidence, which would have been merely corroborative of the evidence of the deposit slip, would undermine confidence in the outcome of that verdict.

Furthermore, it is significant that Wilkerson testified that he knew that the account had been closed for eight or nine months prior to the transaction. N.T., 8/8/2011, at 110. Therefore, Wilkerson possessed actual knowledge that the check could not be honored. As the Commonwealth notes, "[r]egardless of whether [notice] came from the dealership on September 19, the dealership on September 28, or from his own knowledge that he wrote the check on a closed account, the check could not clear, and

---

[6] We note, however, that the prosecution established on cross-examination of the dealership's finance manager that the dealership previously utilized a verification system for checks, whereby they could determine the validity of a check without attempting to deposit it. N.T., 8/8/2011, at 91. This fact suggests that the dealership could have received notice that the check would not be honored without conducting any activity that would reflect on its bank records. The jury could have concluded from this fact that Mielke's testimony that he received notice from the management that the check would not clear was derived from the use of the verification system, and not from an attempt to deposit the check into the dealership's bank account.

[Wilkerson] never made good." Brief for Commonwealth at 8. Wilkerson's admission is all the more significant when considering the court's jury instruction on the statute's requirements, which included the following:

> [E]vidence has been presented in this case that [Wilkerson] had no open account with drawee, the bank, at the time the check was issued. If you are satisfied beyond a reasonable doubt that this was the stated fact, you may find that [Wilkerson] knew that the check would not be paid.

N.T., 8/9/2011, at 54. While this instruction may be somewhat of an oversimplification of the knowledge requirement, Wilkerson has never challenged the legal accuracy of this instruction. Regardless, the jurors were instructed to find that Wilkerson met the knowledge requirement if they were satisfied that the bank account was closed, which is a fact that they heard directly from Wilkerson.

There is no dispute that Wilkerson's bank account was closed at the time of the transaction, and there is no doubt that the check that he passed would not clear. Wilkerson's only defense was that he lacked the requisite intent because his passing of the check was an accident. Wilkerson cogently presented this theory to the jury, and the jury rejected it wholesale. The bank records would not have affected the ultimate question of whether the passing of the check was an accident. Therefore, we conclude that there is no reasonable probability that the bank records' presentation at trial would have changed the outcome of the verdict; thus, his trial counsel's failure to acquire the bank records did not prejudice Wilkerson. Because Wilkerson

has failed to demonstrate prejudice, his ineffectiveness claim is without merit, and we need not consider the remaining elements of the claim. **See Tharp**, 101 A.3d at 747. Furthermore, because Wilkerson did not raise an issue of fact, which, if resolved in his favor, would justify relief, the PCRA court did not err in dismissing Wilkerson's petition without a hearing. **See Simpson**, 66 A.3d at 260-61.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/2015