J-A07001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ROBERT LELLOCK, | |
| Appellant | No. 2021 WDA 2013 |

Appeal from the Judgment of Sentence Entered October 22, 2013
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):
CP-02-CR-0003936-2013
CP-02-CR-0013778-2012

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 23, 2015**

Appellant, Robert Lellock, appeals from the judgment of sentence of an aggregate term of 32-64 years' incarceration, imposed following his conviction for multiple sexual offenses against minors committed while he worked as a security guard at a Pittsburgh middle school.  He presents three questions for our review.  First, Appellant claims the trial court abused its discretion when it admitted other-bad-acts evidence.  Second, he challenges the discretionary aspects of his sentence.  Third, he contends that the trial court erred in designating him as a Sexually Violent Predator (SVP).  After careful review, we affirm in part, vacate in part, and remand for resentencing.

The trial court briefly summarized the facts adduced at trial as follows:

[T]he evidence presented at trial established that Arthur Rooney Middle School, located on the North Side of the City of Pittsburgh, opened for the 1998-1999 school year. At that time [Appellant], a Pittsburgh School Police Officer, would patrol the school and assist with various disciplinary matters. [Appellant] was observed by several teachers frequently taking male students out of class, including the four (4) victims herein: Shawn Logan, Jeffrey Waldenmeyer, Chris O'Keefe and David Jankowski. Upon taking the boys out of class, [Appellant] would take them to a janitor's closet where he would touch their nipples and penises through and underneath their clothing. Particularly with regard to Shawn Logan, [Appellant] would masturbate the boy's penis until he ejaculated and make the boy do the same to him. On several occasions, [Appellant] made him "kiss" the head of his penis, and when the child did so, he would force his penis into his mouth. In order to ensure Logan's silence, he threatened the child with violence against him and his family and also threatened criminal prosecution for stolen credit cards Logan had in his possession the first time they met.

Trial Court Opinion (TCO), 7/15/14, at 1-2.

Appellant was arrested on September 19, 2012. On November 21, 2012, the Commonwealth charged him, by criminal information, with numerous sexual offenses arising from his sexual assault of the four victims, although many of the charges were withdrawn or dismissed prior to trial. Ultimately, Appellant proceeded to a jury trial on July 22, 2013, facing nine charges at CP-02-CR-0013778-2012, and four charges at CP-02-CR-0003936-2013. The jury convicted Appellant on all counts.

On October 22, 2013, the trial court held an SVP hearing, at which the court deemed Appellant to be an SVP. Immediately thereafter, the trial court sentenced Appellant for the following offenses at CP-02-CR-0013778-2012:

- count 2 - involuntary deviate sexual intercourse (IDSI) (victim under 16), 18 Pa.C.S. § 3123(a)(7), 10-20 years' incarceration;

- count 10 - endangering the welfare of children (EWOC), 18 Pa.C.S. § 4304(a), 3½-7 years' incarceration;

- count 11 - corruption of minors (COM), 18 Pa.C.S. § 6301(a)(1), 2½-5 years' incarceration;

- count 13 - EWOC, 3½-7 years' incarceration; and

- count 15 - COM, 2½-5 years' incarceration.

Additionally, at CP-02-CR-0003936-2013, Appellant was sentence at count 2 to 10-20 years' incarceration for IDSI. The trial court ordered each of these sentences to run consecutively to one another, resulting in an aggregate sentence of 32-64 years' incarceration.[1]

Post-sentence motions were not initially filed. However, on November 15, 2013, the trial court permitted Appellant to file a post-sentence motion *nunc pro tunc* following the appointment of current counsel from the Allegheny County Public Defender's office. The trial court denied that motion on December 3, 2013, and Appellant filed a timely notice of appeal on December 20, 2013. Pursuant to an order to do so as issued by the trial court, Appellant filed a timely Pa.R.A.P. 1925(b) statement of errors

---

[1] Each of these sentences was also the statutory maximum penalty for the corresponding offense.

complained of on appeal. The trial court issued its Rule 1925(a) opinion on July 14, 2014.

Appellant now presents the following questions for our review:

I. Did the lower court abuse its discretion when it admitted evidence of alleged behavior of [] Appellant pertaining to Robert Shannon, as the evidence was irrelevant, noncriminal, and non-probative, yet highly prejudicial?

II. Did the lower court abuse its discretion when it sentenced [] Appellant to a manifestly excessive and unreasonable period of thirty-two to sixty-four years of incarceration?

III. Did the lower court err when determined clear and convincing evidence existed to find [] Appellant was a [SVP]?

Appellant's Brief at 6. Additionally, Appellant challenges the legality of his sentence, a claim he first raised in a post-submission communication that he filed pursuant to Rule 2501(a).[2]

Appellant's first claim concerns the admission of other-bad-acts evidence. The trial court describes the evidence in question as follows:

---

[2] In Appellant's 1925(b) statement, he also challenged his convictions based on the Commonwealth's purported failure to file within the time period set by statute of limitations for the charged offenses. As is apparent from the facts and procedural history of this case, Appellant was not arrested and/or charged for the offenses committed against the four victims for more than a decade after the underlying criminal conduct allegedly occurred. However, Appellant has abandoned this claim as it is not raised his brief. Although the relevant statute of limitations in effect in 1999 expired prior to Appellant's arrest, that statute had twice been extended such that the charges were timely filed in this case. *See* TCO, at 2-5 (explaining the effects of the extensions/amendments to the pertinent statute of limitations in this case).

- 4 -

At trial, the Commonwealth averred that [Appellant] would pull male students out of class and take them into a closet at the school where he would then sexually assault them. The Commonwealth presented the testimony of Ronald Zangaro, the principal of Arthur Rooney Middle School at the time of the events in question. Mr. Zangaro testified that on May 28, 1999, he was making his customary round of the school shortly before dismissal when he heard voices and saw light coming from a storage closet on the 3rd floor. He opened the door and found student Robert Shannon in the closet with [Appellant], though they were both clothed and not touching at the time. Mr. Zangaro questioned Robert Shannon in the presence of [Appellant], and Shannon denied any inappropriate conduct. [Appellant] was then permitted to walk Shannon back to class. [Appellant] explained the incident by stating that Shannon was his confidential informant and had challenged him to a test of strength, so they were preparing to wrestle.

TCO, at 5-6.

Appellant contends this evidence was not admissible under any exception to the rule against other-bad-acts evidence, that its probative value was outweighed by its prejudicial effect and, therefore, that the trial court abused its discretion when it admitted it over Appellant's objection. Notably, Robert Shannon died more than a decade prior to Appellant's trial. Appellant argues that this fact left him "unable to combat the jury's worst possible assumptions regarding the incident." Appellant's Brief at 22.

In reviewing Appellant's claim, we adhere to the following standards:

With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.

***Commonwealth v. Flamer***, 53 A.3d 82, 86 (Pa. Super. 2012) (internal citations and quotation marks omitted).

"Under the Pennsylvania Rules of Evidence, evidence of other bad acts or crimes that are not currently being prosecuted against the defendant are not admissible against the defendant to show his bad character or propensity to commit criminal acts." ***Id.*** at 87 (citing Pa.R.E. 404(b)). "However, evidence of other crimes may be admissible where that evidence is used for some other purpose." ***Id.*** Such purposes explicitly include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 404(b)(2). Case law recognizes similar (or more specific) purposes under Rule 404(b)(2) that also overcome the general ban on evidence of other bad acts, such as "a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others[.]" ***Commonwealth v. Brookins***, 10 A.3d 1251, 1256 (Pa. Super. 2010) (quoting ***Commonwealth v. Collins***, 703 A.2d 418, 422-23 (Pa. Super. 1997)). Here, the trial court admitted the Shannon-related evidence because it demonstrated "a common scheme regarding [Appellant's] removing male students from their classrooms and bringing them into closets within the school." TCO, at 7.

Appellant presents several arguments why the Shannon incident did not fall under the common scheme/plan exception. We agree with Appellant that the trial court's admitting of this evidence under the common

scheme/plan exception is at least questionable in light of the fact that there was no evidence that Shannon had been victimized by Appellant in a manner similar to the victims in this case. Indeed, there is no evidence that the Shannon incident involved any criminal conduct at all. However, further analysis of the trial court's error in this regard is unnecessary.

The Commonwealth asserts that even if the Shannon-related evidence was erroneously admitted, any such error was harmless. We agree.

> [A]n error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If honest, fair minded jurors might very well have brought in not guilty verdicts, an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.

*Commonwealth v. Story*, 383 A.2d 155, 166 (Pa. 1978) (internal citations, quotation marks, and footnotes omitted).

In this case, the Commonwealth presented the untainted testimony of four victims who testified to having been sexually assaulted by Appellant in strikingly similar circumstances, at the same school, and during the same school year. Each victim testified that Appellant had removed them from their normal school day, took them to secluded closets in the school, and then proceeded to molest them. While this case lacked any physical

evidence of note, the combined effect of the four victims' testimony constituted overwhelming evidence of guilt. It is simply implausible that all four victims had concocted such similar allegations, more than a decade after the molestations occurred, in a concerted effort to frame Appellant.

We must consider the effect of the 'tainted' evidence in this context. To the extent that the Shannon-related evidence appears to point to a common scheme or plan, it was merely cumulative of the far more powerful testimony provided by the four victims. The fact that the Shannon-related evidence did not present prior criminal or bad conduct may very well have rendered it inadmissible under Rule 404. However, the Shannon-related evidence was not significantly prejudicial to Appellant for the same reason. Appellant complains that the jury was permitted to assume the worst from this evidence. However, such prejudice is wholly speculative. On its face, there was no "bad" or "criminal" conduct presented by the Shannon-related evidence.

Appellant cites **Commonwealth v. Miles**, 846 A.2d 132 (Pa. Super. 2004), in support of his assertion that admission of the Shannon-related evidence was not harmless error. We find **Miles** easily distinguishable from the facts of the instant case. In **Miles**, the appellant was convicted of separately robbing Jones and Philip. The inadmissible evidence in question was that pertaining to a third robbery, of Siebert, which Miles had allegedly committed near to where Jones and Philip had been robbed. After concluding that the evidence of the third robbery was inadmissible under

several Rule 404(b) theories, the **Miles** court also concluded that admission of evidence of the robbery of Siebert was not harmless error, reasoning as follows:

> The evidence of Miles's guilt consisted entirely of the testimony of the two victims, Jones and Philip, who each identified Miles as the perpetrator, and who indicated that they were robbed within a short period of time in the same geographic vicinity. Jones's and Philip's descriptions of the perpetrator's appearance were not distinctive and did not demonstrate that the robberies were conducted in a unique fashion such that the perpetrator's method could be termed a "signature." No other evidence was presented to link the Jones and Philip robberies or to establish that Miles was the perpetrator of each robbery.
>
> On the other hand, Siebert's testimony that he was robbed in the same location as Philip provided an additional, compelling fact from which the jury could have inferred and concluded that Miles committed the Jones and Philip robberies two days earlier. Thus, Siebert's testimony concerning the subsequent robbery was clearly prejudicial to Miles. Although the evidence provided by Jones and Philip was substantial, it was outweighed by the prejudice resulting from the compelling but erroneously admitted evidence of the subsequent robbery of Siebert. We cannot conclude that the erroneous admission of Siebert's testimony could not have contributed to the verdict. Accordingly, the error in admitting Siebert's testimony was not harmless.

**Miles**, 846 A.2d at 138.

As noted above, and unlike what occurred in **Miles**, the Shannon-related testimony was not, at least on its face, evidence of another crime. Moreover, in **Miles**, the identity of the perpetrator was in doubt in a manner that was not analogous to the instant case. The victims in **Miles**, Jones and Philip, gave general descriptions of their respective assailants, and did not specifically identify Miles until two day after the robberies. Here, however,

Appellant's identity was known to the victims at the time they were molested. Consequently, the possibility of mistaken identity was not present in this case as it was in **Miles**. Additionally, it is also significant that in **Miles**, two 'untainted' witnesses testified, whereas in this case, there were four. As a result, we conclude that **Miles** is neither compelling nor persuasive on the question of whether admission of the Shannon-related evidence was harmless error. Accordingly, we conclude that Appellant is not entitled to relief on this claim.

Next, Appellant contends that his sentence of 32-64 years' incarceration was manifestly unreasonable, a claim that questions the discretionary aspects of his sentence. However, in a post-submission communication, filed by permission after Appellant's oral argument, Appellant also asserts that his sentence is illegal. Because a successful illegal sentencing claim would render Appellant's discretionary aspects of sentencing claim moot, we will first address the legality of his sentence to preserve judicial economy.

"Legality of sentence questions are not waivable and may be raised *sua sponte* by this Court." **Commonwealth v. Watley**, 81 A.3d 108, 118 (Pa. Super. 2013) *appeal denied*, 95 A.3d 277 (Pa. 2014). Furthermore, "[a]pplication of a mandatory minimum sentence gives rise to illegal sentence concerns, even where the sentence is within the statutory limits." **Id.**

Recently, in **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa. Super. 2014), this Court recognized the unconstitutionality of 42 Pa.C.S. § 9718 based on the rule announced by the United States Supreme Court in **Alleyne v. United States**, 133 S.Ct. 2151 (2013). The **Alleyne** Court held as a general rule that any fact that served to aggravate the minimum sentence for an offense must be found by the jury under a reasonable doubt standard of proof. The **Wolfe** court followed previous decisions of this court striking down similar mandatory minimum statutes. **See Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) (striking down 42 Pa.C.S. § 9712.1); **Commonwealth v. Valentine**, 101 A.3d 801 (Pa. Super. 2014) (same).[3] The **Wolfe** Court specifically held that: "As Section 9718 is indistinguishable from the statutes struck down in **Newman** and **Valentine**, we are constrained to conclude that Section 9718 is also facially void." **Wolfe**, 106 A.3d at 806.

In the present case, Appellant was sentenced under the mandatory minimum sentencing provision of Section 9718 for both IDSI offenses for which he was convicted. Because Section 9718 is constitutionally unsound and facially invalid under **Wolfe**, we vacate Appellant's IDSI-related sentences and remand for resentencing on those counts. Accordingly, we

---

[3] Immediately after **Wolfe** was decided, this Court also struck down 18 Pa.C.S. § 7508 in **Commonwealth v. Vargas**, 108 A.3d 858 (2014) (*en banc*), based on **Alleyne**.

decline to address Appellant's discretionary aspects of sentencing claim at this time, without prejudice to Appellant's ability to raise such a claim following resentencing.

Finally, Appellant contends that the trial court erred when it determined that he was an SVP. Our standard for reviewing a sufficiency challenge to an SVP determination is as follows:

> If a person appeals an SVP designation and contends the evidence supporting that designation was insufficient, our standard of review is clear. We do not weigh the evidence presented to the sentencing court and do not make credibility determinations. Instead, we view all the evidence and its reasonable inferences in a light most favorable to the Commonwealth. We will disturb an SVP designation only if the Commonwealth did not present clear and convincing evidence to enable the court to find each element required by the SVP statutes.

*Commonwealth v. Feucht*, 955 A.2d 377, 381-82 (Pa. Super. 2008) (internal citations omitted). The clear and convincing standard of proof applied by the trial court does not require proof beyond a reasonable doubt. It requires "evidence that is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue." *Commonwealth v. Maldonado*, 838 A.2d 710, 715 (Pa. 2003).

This Court has explained the SVP determination process as follows:

> After a person has been convicted of an offense listed in [42 Pa.C.S.A. § 9799.14], the trial [court] then orders an assessment to be done by the [SOAB][4] to help determine if that person should be classified as a[n SVP. An SVP] is defined as a person who has been convicted of a sexually violent offense ... and who [has] a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons. Moreover, there must be a showing that the defendant's conduct was predatory.... Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to reoffend, an opinion about which the Commonwealth's expert is required to opine. However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an independent element.

> ***Commonwealth v. Stephens***, 74 A.3d 1034, 1038–1039 (Pa. Super. 2013) (internal quotation marks, ellipsis, and citations omitted).

***Commonwealth v. Hollingshead***, 2015 WL 745709, *1-*2 (Pa. Super. 2015).

Appellant first contends that "the Commonwealth failed to present sufficient evidence to prove [that he] has a mental defect or abnormality" necessary to designate him as an SVP. The Commonwealth's expert, Dr. Allan Pass, testified that Appellant's pertinent mental defect or abnormality

---

[4] Sexual Offenders Assessment Board.

was that of "paraphilia not otherwise specified [(NOS)]." N.T., 10/22/13, at

9. Appellant argues:

> Dr. Pass defined someone with paraphilia NOS as "an individual [that] has engaged in behavior — sexual misconduct behavior over a period of time of at least six months which has created concerns and conflict, social conflict, personal conflict for himself." Dr. Pass added, "And obviously the case here is that we have an adult who is engaged in sexual misconduct with juvenile males over the course of approximately one year and six months."
>
> Using the crimes for which he was charged with and found guilty of as a guide - the claim that Mr. Lellock engaged in sexual misconduct for a year cannot be credited. Dr. Pass testified the "six months or longer" term of misconduct is not only necessary to fit the paraphilia NOS definition, but "any of the paraphilias require that the behavior that's under examination extend for six months or longer."
>
> Shawn Logan testified that Mr. Lellock first abused him in the summer of 1998. Logan was expelled from Rooney Middle School on February 1, 1999. Parties agreed that Shawn Logan enrolled at Rooney Middle School on September 8, 1998. All abuse alleged by Logan likely occurred within the five month period between September 1, 1998, and February 1, 1999.[3]
>
> ____
>
> [3] At the October 19, 2012, Preliminary Hearing, Mr. Logan guessed the first event occurred "a month before school started." Granting Logan an entire month before the beginning of school would bring the farthest possible date of that encounter to August 8, 1998. Six months from then was February 8, 1999, seven days after Logan's expulsion. The Preliminary Hearing transcript is not part of the record, yet Dr. Pass testified to reviewing it when forming his opinion.
>
> ____
>
> David Jankowski testified that he began at Rooney Middle in 1998, "a month or two after it opened." Jankowski did not remember when his first contact with Mr. Lellock was, only that

"it was probably in like October, November, or December." (TT 191). He additionally could not remember the date of the final incident with Mr. Lellock he testified to, but stated, "It was cold out. Maybe October, December." Asked if it could have been January, he responded, "Yeah." Granting Jankowski the entire October to January timeframe, still only [four months had elapsed.]

Christopher O'Keefe did not testify to a specific date, or even range of dates beyond when he attended Rooney Middle School, when his single claim of abuse occurred. Additionally, Jeffery Waldenmyer could not provide an exact time frame in which the one event leading to his accusation of sexual assault occurred. When asked when this occurred, he testified, "Man, its 13 or 14 years ago. I think it could be 7th or 8th [grade]. I ain't going to lie. It could be. But I think 8th. My honest answer would be 8th, but I can't be official." Waldenmyer's 8th grade-year was September 8, 1998, to June 18, 1999. Therefore June 1999, to January 2000, must be excluded from any calculation.

Granting Logan and Jankowski the benefit of all inferences made in their testimony only provides a five month offense cycle. Neither Waldenmyer nor O'Keefe could remember, even within a year's period of time, when the events leading to their accusations occurred. The 18 month period used by Dr. Pass is not supported by any evidence from the trial or in the record. In fact, Dr. Pass testified that he did not review the trial transcript before making his assessment. When asked on cross-examination, "if the testimony shows that it was less than a six-month window cumulative, all four, then we are missing a prong of the SVP?" Dr. Pass answered, "That's correct."

Appellant's Brief, at 36-38 (citations to the SVP hearing record omitted).

Thus, Appellant argues that there was not sufficient evidence presented by the Commonwealth that Appellant engaged in sexual misconduct for at least six months, a finding which is necessary to the diagnosis of paraphilia NOS which laid the foundation for Appellant's SVP designation.

The Commonwealth disagrees, and cites evidence demonstrating that Appellant engaged in sexually inappropriate behavior over a period of time in

excess of six months with victim Shawn Logan. Mr. Logan testified at trial that Appellant first grabbed his penis in an incident that occurred before the school year began in the summer of 1998. N.T., 7/23/13, at 53. Mr. Logan also testified that after February 1, 1999 (the date Mr. Logan was expelled from the school), Appellant picked him up in his police cruiser and attempted to solicit oral sex from Logan. *Id.* at 73.

Appellant admits that Logan's testimony reveals that the first incident of abuse could have occurred as early as August 8, 1998. It is also reasonable to assume that events that occurred after Logan's expulsion did not occur the same day he was expelled, which was on February 1, 1999. Logan did not testify with any specificity regarding the latter date, however, he also did not provide any indication that the last incident with Appellant occurred immediately after he was expelled. If the final incident occurred on or after February 8, Dr. Pass' determination that Appellant engaged in sexually inappropriate behavior with Logan for at least six months is supported by the record.

Although we agree with Appellant that the record does not support Dr. Pass' estimate of 18 months, it appears to us that it is a reasonable conclusion that Appellant abused Logan for at least 6 months, and it is a duration of 6 months, not 18 months, that was relevant to Dr. Pass' diagnosis that supported Appellant's SVP designation. It is also fair to say, however, that there is a possibility that the abuse may have occurred over a period that fell just short of 6 months. However, viewing the "evidence and

its reasonable inferences in a light most favorable to the Commonwealth," we are constrained to reject Appellant's claim that there was insufficient evidence that Appellant's sexual abuse of his victims exceeded 6 months in duration. **Hollingshead**, **supra**. It was reasonable to infer from the evidence of record that at least 6 months passed between Appellant's first and last inappropriate contacts with Logan. We may not revisit the trial court's decision by reweighing the evidence. It is enough that the evidence of record, and reasonable inferences derived therefrom, supported the SVP designation and its underlying mental abnormality/defect diagnosis. It is simply not relevant under our standard of review that an alternative conclusion regarding whether the criteria for the diagnosis had been met is also supported by the record.

Appellant also asserts that "the Commonwealth failed to show, even if the paraphilia NOS diagnosis is accurate, the presence of clear and convincing evidence to establish that the diagnosis makes [Appellant] likely to engage in future predatory sexual behavior." Appellant's Brief, at 39. Similarly, he asserts that the "Commonwealth failed to analyze, discuss, or prove the likelihood [that Appellant] would reoffend." **Id.** at 40. Appellant did not raise a claim concerning Appellant's future dangerousness in his Rule 1925(b) statement. Consequently, this matter waived.[5] **See**

---

[5] In Appellant's Rule 1925(b) statement, he asserted that the Commonwealth had failed to prove by clear and convincing evidence that he
*(Footnote Continued Next Page)*

*Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

Sentences for IDSI are **vacated.**  Judgment of sentence **affirmed** in all other respects.  Case **remanded** for resentencing for IDSI convictions. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  4/23/2015

---

*(Footnote Continued)* ────────────

engaged in sexually predatory behavior and/or that he suffered from a mental abnormality.  Appellant's Rule 1925(b) statement, 3/11/14, at 6 ¶ d. There is no mention of a challenge to the trial court's determination regarding Appellant's likelihood to reoffend.