J-S65005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON MICHAEL FRAZIER | |
| Appellant | No. 296 WDA 2015 |

Appeal from the PCRA Order January 20, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0011969-2000

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:               **FILED DECEMBER 2, 2016**

Jason Michael Frazier appeals from the order, entered in the Court of Common Pleas of Allegheny County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Upon careful review, we affirm.

This Court has previously set forth the factual and procedural history of this matter as follows:

> On July 3, 2000, Pittsburgh Police received a report indicating a male had been shot at while he was changing a tire along Bennett Street.  When police arrived at the scene, they discovered [Frazier] in a highly agitated and angry state. [Frazier] told officers, "Somebody is going to pay for this.  I know who is responsible for this."  When asked whether he knew who had shot at him, [Frazier] told police "Kelly Street is responsible for this."

---

[*] Retired Senior Judge assigned to the Superior Court.

On the early morning of July 4, 2000, Sherdina Jones was shot and killed near the 7500 block of Kelly Street. Upon arrival, police were able to retrieve eight shell casings from the crime scene. Shortly after the shooting occurred, police received an anonymous tip indicating the murder weapon had been hidden in a dumpster situated along the 7300 block of Frankstown Road. Police searched the dumpster and recovered a modified semiautomatic .22 caliber rifle loaded with nine live rounds in the clip.

Jones' autopsy revealed she had been shot four times and that each of the four bullets had settled in her abdomen. The coroner was able to recover bullet fragments lodged in Jones' body for forensic examination. Subsequent analysis established that the eight casings recovered from the crime scene were fired from the .22 rifle recovered from the dumpster. Subsequent analysis further established that the bullet fragments recovered from Jones' body also had been fired from the .22 rifle.

On July 5, 2000, a homicide detective investigating the case went to [Frazier's] residence and, after discovering [Frazier] was not home, impounded [Frazier's] vehicle for inspection. After learning his vehicle had been impounded, [Frazier] went to the East Liberty homicide office to recover it. When [Frazier] arrived at the office, a detective questioned him about the shooting death of Jones. [Frazier] claimed he had no idea who killed Jones and also told the detective he was not in Pittsburgh on the night of the shooting. On July 21, 2000, [Frazier] returned to the homicide office a second time to get his vehicle out of impound. Once [Frazier] arrived at the office, detectives placed him under arrest. [Frazier] was charged with criminal homicide later that day.

On July 25, 2000, [Frazier's] girlfriend contacted police and informed them that [Frazier] wanted to meet with homicide detectives in his holding cell. The next day, detectives met with [Frazier] at the Allegheny County Jail and issued [him] his **Miranda**[1] warnings. Initially, [Frazier] confessed to purchasing a .22 rifle at K-Mart and then modifying the weapon by cutting off the stock. [Frazier] told the detectives that on the early morning of July 4, 200[0], he had been with a few friends

_____

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

at a cookout and, later, went with these friends to a hotel room. He told the detectives that upon leaving the hotel, he and a friend named Geoffrey Warren decided to follow Warren's female acquaintance to see whether she was involved with anyone else. The pair followed the female to Kelly Street. [Frazier] told the detectives that when he drove onto Kelly Street he noticed three men hiding in some weeds. [Frazier] said he then told Warren to duck and, immediately upon doing so, heard two shots ring out. [Frazier] told detectives Warren pulled out the .22 rifle and shot at the men in the weeds eleven times.

[Frazier], however, quickly changed his story and admitted to detectives that when he turned onto Kelly Street he "felt something was about to happen" so he pulled his .22 rifle, reclined the driver's seat, placed the rifle on the window sill, and shot eleven times in the direction of the three men hiding in the weeds. The detectives taped the interview and took notes. The detectives allowed [Frazier] to review the notes at the conclusion of the interview and [Frazier], after reviewing the notes, signed in five places.

On January 5, 2001, [Frazier] filed an omnibus pre-trial motion seeking, in relevant part, suppression of his confession. The trial court denied the motion January 11, 2001, and trial [] commenced the following day. On January 19, 2001, the jury returned a first[-]degree murder verdict. Immediately thereafter, the trial court imposed a judgment of sentence of life imprisonment without the possibility of parole.

*Commonwealth v. Frazier*, 1624 WDA 2007, at 1-4 (Pa. Super. filed 3/10/08) (citations and footnotes omitted).

Frazier appealed his judgment of sentence to this Court, which affirmed by memorandum decision dated February 13, 2003. Our Supreme Court denied allowance of appeal. On April 29, 2004, Frazier filed a *pro se* PCRA petition; the court appointed counsel, who filed an amended petition. Following the issuance of a Pa.R.Crim.P. 907 notice of intent to dismiss and a response filed by Frazier, the court dismissed the petition on August 30,

2007. The dismissal was affirmed on appeal, and the Supreme Court denied allowance of appeal.

On April 2, 2008, prior to filing a petition for allowance of appeal as to his first PCRA petition, Frazier filed a second *pro se* PCRA petition. Upon receipt of the court's Rule 907 notice, Frazier filed a counseled response. On May 9, 2008, the court denied relief on the basis that it could not entertain a second PCRA petition while the denial of the first petition was pending on appeal. Frazier appealed this order, which was vacated and remanded for further consideration by the PCRA court because, subsequent to the entry of the PCRA court's May 9, 2008 order, the petition for allowance of appeal as to the dismissal of Frazier's first PCRA petition was denied by the Supreme Court.

On remand, the PCRA court ordered Frazier to file an amended petition, which he did on June 26, 2009. The court subsequently filed a Rule 907 notice of intent to dismiss, and Frazier responded. On October 20, 2009, the court dismissed the petition; Frazier appealed to this Court, which affirmed on February 28, 2014.[2] The Supreme Court denied allowance of appeal on October 6, 2014.

---

[2] This Court's disposition of Frazier's second PCRA appeal was delayed for several years because the state court record was in the custody of the U.S. District Court for the Western District of Pennsylvania pursuant to a *pro se* petition for writ of habeas corpus filed by Frazier.

On November 5, 2014, Frazier filed the PCRA petition which is the subject of the instant appeal. In his petition, he alleged newly-discovered evidence in the form of affidavits submitted by several alleged witnesses to the shooting. By order dated January 20, 2015, the court dismissed the petition and this timely appeal followed.

Frazier raises the following issues for our review:[3]

1. Whether the PCRA court erred in summarily dismissing as time-barred Frazier's *pro se* PCRA petition, which was filed within sixty days of the conclusion of his prior pending appeal, and whether the court erred in denying an evidentiary hearing and other relief where numerous issues of material fact where raised based upon newly[-]discovered exculpatory evidence and trial counsel ineffectiveness for failing to call Jerone Ebo, Matthew Ebo ("Ebo Brothers") and Ronald Thornhill to testify that Paul Pierce had admitted to killing the victim.

2. Whether the PCRA court erred in summarily dismissing as time-barred [Frazier's] *pro se* PCRA petition[,] and whether the PCRA court erred in denying an evidentiary hearing and other relief on a petition which raised numerous issues of material fact based upon the newly[-]discovered exculpatory evidence of Eddie Green and Bryant Blye that Paul Pierce had admitted to shooting at Frazier.

Brief of Appellant, at 5.

We begin by noting our well-settled standard of review:

On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error.

_____

[3] We have combined and restated the issues numbered one and two in Frazier's brief for ease of disposition, as they raised the same claims, but with regard to different witnesses.

Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the PCRA court level. The PCRA court's credibility determinations, when supported by the record, are binding on this Court. However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions.

Additionally, courts will not entertain a second or subsequent request for PCRA relief unless the petitioner makes a strong prima facie showing that a miscarriage of justice may have occurred. Appellant makes a prima facie showing of entitlement to relief only if he demonstrates either that the proceedings which resulted in his conviction were so unfair that a miscarriage of justice occurred which no civilized society could tolerate, or that he was innocent of the crimes for which he was charged.

*Commonwealth v. Medina*, 92 A.3d 1210, 1214–15 (Pa. Super. 2014) (citations and quotations omitted).

A petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition is met. *See* 42 Pa.C.S.A. § 9545(b)(1). Any petition invoking such an exception must be filed within 60 days of the date the claim could have been presented. *See id.* § 9545(b)(2). The timeliness of a PCRA petition implicates the jurisdiction of this Court and the PCRA court. *Commonwealth v. Williams*, 35 A.3d 44, 52 (Pa. Super. 2011). No court has jurisdiction to hear an untimely PCRA petition. *Id.*

Here, Frazier's judgment of sentence became final on or about October 22, 2003, at the expiration of the 90 day period for filing a petition for writ of certiorari to the U.S. Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3) (judgment of sentence becomes final at conclusion of direct review or

expiration of period for seeking such review); U.S. Sup. Ct. R. 13. Thus, Frazier had until October 22, 2004, to file a timely PCRA petition. The instant petition was filed on November 5, 2014. Accordingly, Frazier's petition was patently untimely and the PCRA court lacked jurisdiction to consider his claims unless he pled and proved one or more of the exceptions to the time bar.

In his petition and on appeal, Frazier invokes the newly-discovered facts exception to the jurisdictional time bar. Specifically, Frazier presented evidence in the form of affidavits from five witnesses to whom Paul Pierce allegedly confessed to the shooting of which Frazier was convicted. Our Supreme Court has previously described a petitioner's burden under the newly-discovered fact exception as follows:

> Subsection (b)(1)(ii) has two components, which must be alleged and proved. Namely, the petitioner must establish that: 1) the facts upon which the claim was predicated were unknown and 2) could not have been ascertained by the exercise of due diligence.

*Commonwealth v. Bennett*, 593 Pa. 382, 930 A.2d 1264, 1272 (2007), citing 42 Pa.C.S. § 9545(b)(1)(ii) (brackets and quotation marks omitted). "Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced." *Commonwealth v. Williams*, 35 A.3d 44, 53 (Pa. Super. 2011).

In denying Frazier relief, the PCRA court concluded that Frazier's "newly-discovered evidence" is, at best, cumulative of evidence already presented at trial through Frazier's confession to the killing. The court also found that the testimony contained in the affidavits will not result in a different outcome if a new trial is granted.

In its brief, the Commonwealth argues that the affidavits proffered by Frazier do not present new facts, but only newly[-]discovered sources for previously known facts. Such evidence, the Commonwealth notes, cannot form the basis for a successful newly-discovered evidence claim. *See* ***Commonwealth v. Lambert***, 57 A.3d 645 (Pa. Super. 2012) (relief denied where affidavit alleging perjury only supplied new witness to previously raised claims). The Commonwealth asserts that the affidavits presented by Frazier "all mirror [Frazier's] claim that he fired his rifle into a crowd of people in the early morning hours of July 4, 2000 because he had been fired on first." Brief of Appellee, at 18. Moreover, the Commonwealth argues, Frazier has not demonstrated that the new evidence would have changed the outcome of the trial. The Commonwealth argues that the jury already considered evidence that Frazier was responding to shots fired in his direction, yet still found him guilty of first-degree murder. Accordingly, Frazier should not be granted relief.

We begin by noting that Frazier's claims require that we engage in two separate and distinct analyses. As we have previously noted,

> The timeliness exception set forth at [s]ection 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, as an initial jurisdictional threshold, [s]ection 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered-evidence claim. *See* 42 Pa.C.S.A. § 9543(a)(2)(vi) (explaining that to be eligible for relief under PCRA, petitioner must plead and prove by preponderance of evidence that conviction or sentence resulted from, inter alia, unavailability at time of trial of exculpatory evidence that has subsequently become available and would have changed outcome of trial if it had been introduced).

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015), reargument denied (Apr. 14, 2015), appeal denied, 125 A.3d 1197 (Pa. 2015), reconsideration denied (Nov. 17, 2015) (citations and quotation marks omitted). Thus, for jurisdictional purposes, we must first determine if Frazier has presented facts that were unknown to him and could not have been obtained through the exercise of due diligence. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii). We must further ascertain whether Frazier presented his claims within 60 days of the date the claims could have been presented. *See* 42 Pa.C.S.A. § 9545(b)(2). Only if we conclude that Frazier has satisfied this exception to the jurisdictional time bar, may we proceed to address the substantive aspects of his after-discovered evidence claims. We will address each allegedly previously unknown fact presented by Frazier in turn.

The Ebo Brothers

In his PCRA petition, Frazier presented affidavits from the Ebo Brothers, who both maintained that Paul Pierce told them he had been the one to shoot the victim and that they had informed Frazier's trial counsel of this fact prior to trial. Frazier asserts that he had repeatedly asked his trial counsel to interview the brothers, "suspecting that they might have exculpatory information[.]" Brief of Appellant, at 21. However, Frazier claims that counsel never informed him that he had interviewed them or that they possessed exculpatory information, instead "only warning [Frazier] that he would not go on any 'fishing expeditions.'" *Id.* Frazier also alleges that correspondence to counsel regarding the Ebo Brothers went unanswered and that counsel told him it would be inappropriate for Frazier to contact any witness directly. Frazier claims that, at the outset of trial, his counsel's investigator actually spoke to the Ebos and learned of the exculpatory information, but did not relay that information to Frazier. Thus, Frazier claims he "had no knowledge of the substance of the Ebos' statements to his counsel either before or during trial." *Id.* Frazier asserts that the Ebo Brothers' statements "affirmatively established [Frazier's] claim of lack of malice and actual innocence of the homicide." *Id.* at 24. Frazier asserts that he could not have obtained this information prior to August 2013 because trial counsel's ineffectiveness prevented him from obtaining the facts contained in the Ebos' affidavits, despite the exercise of due diligence. Because Frazier's prior PCRA proceeding was on appeal between June 2009

- 10 -

and October 6, 2014, he claims he could not have presented his claim any earlier than November 4, 2014, the date he filed the instant petition. Pursuant to our Supreme Court's holding in **Commonwealth v. Lark**, 746 A.2d 585 (Pa. 2000),[4] Frazier claims his filing satisfied the 60-day requirement under section 9545(b)(2).

Frazier is entitled to no relief as to the allegedly unknown facts contained in the Ebo Brothers' affidavits. As noted above, the newly-discovered facts exception to the jurisdictional time bar requires a petitioner to demonstrate he did not know the facts upon which he based his petition and *could not have learned those facts earlier by the exercise of due diligence*. **Williams**, **supra**. This rule is strictly enforced. **Brown**, **supra**.

Here, in an affidavit submitted with the instant PCRA petition, Frazier stated that, prior to his trial, he "believed that [Jerone] Ebo and Matthew Ebo might have information regarding the identity of the person who was responsible for initiating the incident on July 4, 2000[.]" Affidavit of Jason Frazier, 7/28/14, at ¶ 4. As such, prior to his trial, Frazier clearly had reason to believe that the Ebo Brothers possessed information as to the identity of the "real killer." Accordingly, even if trial counsel refused to

_____

[4] In **Lark**, our Supreme Court held that, where an appellant's PCRA petition is pending before a court, a subsequent PCRA petition may not be filed until the resolution of review of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of time for seeking such review.

interview the Ebo Brothers or actively prevented Frazier from obtaining their statements, due diligence required that Frazier pursue the information at the earliest opportunity. At the latest, Frazier could have obtained the Ebo Brothers' statements upon the appointment of new counsel on May 24, 2001. Frazier did not do so. Accordingly, he has not satisfied the due-diligence prong of the newly-discovered fact exception with regard to the affidavits submitted by the Ebo Brothers and is entitled to no relief on that claim.

Ronald Thornhill

Frazier also presented the affidavit of Ronald Thornhill. Thornhill stated that Pierce offered him $5000 to kill Frazier and that Pierce told him he had accidentally killed the victim, by shooting her in the stomach, while attempting to shoot Frazier. Thornhill stated that he would have testified to these facts at trial had counsel interviewed him. In his PCRA petition, Frazier stated that he "informed [defense counsel] that Mr. Thornhill would be able to identify the person who initiated the incident by shooting at Mr. Frazier before Mr. Frazier responded back with shots to defend himself, and possibly had other information." *Pro Se* PCRA Petition, 11/5/14, at 7.27. Frazier claims that counsel initially refused to interview Thornhill, but then told him that his investigator had interviewed Thornhill and that Thornhill had no valuable information.

For the same reasons we denied relief on the Ebo Brothers' statements, we also conclude that the Thornhill evidence does not satisfy the

newly-discovered facts exception to the jurisdictional time bar. Frazier states that he knew Thornhill was in possession of information relating to the "real killer" as far back as the time of his trial, yet failed to pursue that information at the earliest opportunity. Even if, as Frazier alleges, his trial counsel lied to him about interviewing Thornhill, due diligence required that Frazier pursue this claim once he had been appointed new counsel, which occurred in May 2001. As Frazier did not exercise due diligence, he is entitled to no relief.

### Eddie Green and Bryant Blye

Frazier also submitted affidavits from Eddie Green and Bryant Blye. Green stated that he was walking with the victim when she was killed and witnessed the shooting. He averred that he saw Pierce fire twice at Frazier as Frazier drove by in his red Chevrolet Cavalier. Green stated that "[o]n March 31, 2013, he met Frazier at [SCI Greensburg's] Easter Sunday church services and after hearing Frazier's testimony of faith decided to disclose to him that he had been at the scene of the shooting." *Id.* at 42. Frazier averred that he previously had no knowledge as to the identity of any witnesses to the shooting. Green stated in his affidavit that he never associated with Frazier on the streets and had not felt obligated to come forward with what he knew at the time of trial. Frazier asserts that he presented the newly-discovered facts contained in Green's affidavit within 60 days of the date the claim first could have been presented because he filed

the instant PCRA petition within sixty days of the final disposition of his prior PCRA petition. **See Lark**, **supra**.

Blye indicated that he was with Pierce on the date of the shooting when Pierce stated that he "hope[d] [he saw] Jason [Frazier] [be]cause [he felt] like killing somebody." Bryant Blye Affidavit, 6/21/11, at ¶ 2. Fifteen minutes later, Blye claims he was on Kelly Street when he saw Pierce and two friends hide in the bushes after someone yelled to them that Frazier was approaching in a red car. Blye then witnessed Pierce step out from behind the bushes and shoot at Frazier two to three times, at which point Blye fled the scene. As Blye was running away, he heard approximately fifteen more gunshots. Ten minutes later, Blye returned to the scene and learned that a woman had been shot. Frazier asserts that he could not have obtained this information at an earlier date because he and Blye did not know each other and Blye never spoke to the police. Frazier asserts that he presented Blye's affidavit within 60 days of the date the claim first could have been presented because he filed the instant PCRA petition within sixty days of the final disposition of his prior PCRA petition. **See Lark**, **supra**.

We find that the Green and Blye affidavits satisfy the exception to the time bar under section 9545. The information contained in the affidavits was previously unknown to Frazier and could not have been obtained with the exercise of due diligence because Frazier was unaware the Green and Blye had witnessed the shooting and, thus, would have had no reason to seek out information from them earlier. Moreover, Frazier satisfied the 60-

day requirement under the dictates of **Lark**. Accordingly, the PCRA court possessed jurisdiction to consider the substance of this after-discovered evidence claim. Nonetheless, our review indicates that Frazier is entitled to no relief.

Our Supreme Court has previously explained a PCRA petitioner's burden to receive a new trial based on after-discovered evidence as follows.

> The PCRA petitioner must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

**Medina**, 92 A.3d at 1218, quoting **Commonwealth v. Pagan**, 950 A.2d 270, 292 (Pa. 2008).

Here, Frazier asserts that the Blye and Green affidavits confirm that Frazier was attacked first, thus buttressing his trial claim of self-defense. However, as the PCRA court properly concluded, this information is, "at best, cumulative of evidence already presented at trial and presented through [Frazier's] confession to the killing." PCRA Court Opinion, 11/10/5, at 3. Frazier's theory of exculpation at trial was one of self-defense; Blye's and Green's testimony, if offered at trial, would merely corroborate Frazier's

claim.[5]  Accordingly, these affidavits fail to satisfy the second prong of the after-discovered evidence test.  **Medina**, **supra**.

Moreover, the evidence is not of such a character and nature that a different verdict would result if Frazier were granted a new trial.  Frazier's confession to police revealed that, having seen movement in some weeds and believing he was about to be fired at, Frazier used a sawed-off rifle to fire eleven times in the direction of the location of the people he had seen. A mere belief that one is about to be shot at does not entitle an individual to fire eleven shots under the guise of self-defense.  Even if Frazier had been shot at first, he has not demonstrated an entitlement to the use of deadly force, especially given the fact that he was in an automobile and could have readily fled the scene.  **See Commonwealth v. Serge**, 837 A.2d 1255, 1266 (Pa. Super. 2003) ("In order to establish the defense of self-defense under 18 Pa.C.S. § 505, the defendant must not only show that he was protecting himself against the use of unlawful force, *but must also show that*

---

[5] Frazier relies upon this Court's decision in **Commonwealth v. Flamer**, 53 A.3d 82, 88 n.6 (Pa. Super. 2012), for the proposition that "evidence which bolsters, or strengthens, existing evidence is not inadmissible cumulative evidence."  Brief of Appellant, at 23.  However, Frazier fails to note that the **Flamer** Court went on to define such evidence as "corroborative."  Like cumulative evidence, corroborative evidence may not form the basis of an after-discovered evidence claim.  **Medina**, **supra** ("The PCRA petitioner must demonstrate that the evidence . . . is not merely *corroborative or cumulative*[.]") (emphasis added).

*he was free from fault in provoking or continuing the difficulty which resulted in the killing*.") (emphasis added).

For these reasons, neither the Blye affidavit nor the Green affidavit can garner Frazier any relief.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/2/2016